210 So.2d 411 (1968)
Charles BROUSSARD et al., Plaintiffs-Relators,
v.
LIBERTY MUTUAL INSURANCE COMPANY et al., Defendants-Respondents.
No. 2344.
Court of Appeal of Louisiana, Third Circuit.
May 16, 1968.
J. Minos Simon, Lafayette, for plaintiffs-relators.
Landry, Watkins, Cousin & Bonin, by Jacob D. Landry, New Iberia, for defendants-respondents.
En Banc.
SAVOY, Judge.
Plaintiffs filed suit against defendants for a money judgment resulting from the death of a registered bull owned by plaintiffs. The bull died in Vermilion Parish, Louisiana. Plaintiffs alleged that the death of said bull was caused by the bull eating poisonous feed compounded, manufactured and sold by defendant, Rex Milling Co., Inc., a domestic corporation domiciled in Iberia Parish, Louisiana.
The suit was instituted in the 15th Judicial District Court, Parish of Vermilion, Louisiana.
Defendant excepted to plaintiffs' petition by filing an exception of improper venue. The trial judge maintained the exception and ordered the case transferred to the domicile of Rex Milling Co., Inc., which is in the Parish of Iberia, Louisiana, in the 16th Judicial District, State of Louisiana.
From that judgment plaintiffs appealed to this Court. Defendants filed a motion to dismiss the appeal. We granted the motion on the grounds that no appeal would lie from an interlocutory judgment wherein plaintiffs did not suffer irreparable injury. Broussard v. Liberty Mutual Insurance Company (La.App., 3 Cir.1967), 204 So.2d 714. A rehearing was refused. Plaintiffs applied to State Supreme Court for a writ of certiorari, or a writ of review. The Supreme Court denied the application for a writ stating that said judgment was correct. 251 La. 753, 206 So.2d 97 (Feb. 2, 1968).
Plaintiffs then applied to this Court for Writs of Certiorari, Prohibition and Mandamus. After a review of the matter, the Court granted plaintiffs a writ of certiorari *412 and provided that the matter be submitted on briefs without oral argument.
Plaintiffs contend that under LSA-C.C.P. Article 74, the venue for a suit for damages for an offense or quasi offense is in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained. As stated above, the bull died in Vermilion Parish, Louisiana. Plaintiffs also call attention to LSA-C.C.P. Article 45 which provides that if there is a conflict between LSA-C.C.P. Articles 42 and 74, plaintiff may bring the action in either the parish where the domestic corporation has its domicile or in the parish where the damages occurred.
On the other hand, counsel for defendants contends that LSA-C.C.P. Article 74 is limited to damages resulting from offenses and quasi offenses and is inapplicable to the instant matter for this is an action ex contractu.
The applicable provisions of LSA-C.C.P. Article 42 provide:
"The general rules of venue are that an action against:
"(1) An individual who is domiciled in the state shall be brought in the parish of his domicile;

* * * * * *
"(7) A foreign or alien insurer shall be brought in the parish of East Baton Rouge."
LSA-C.C.P. Article 74 provides:
"An action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained."
In Article 7 of their petition, plaintiffs state:
"Defendant Rex Milling Company, Inc. was negligent in the following, though not exclusive, acts of commissions and omissions:
"a. In compounding and selling the poisonous feed to petitioners to be fed said bull;
"b. In failing to take the necessary precautionary steps to prevent the intrusion or inclusion of poisonous matters in the feed sold to petitioners to be fed said bull;
"c. In failing to warn petitioners that said feed was dangerous to livestock, and particularly to the said bull."
The United States Court of Appeals, Fifth Circuit, in the case of Lartigue v. R. J. Reynolds Tobacco Company, 317 F.2d 19 (1963), reviewed the Louisiana cases dealing with products liability. We hereby quote with approval from the Lartigue case, supra, the following language:
"In the food products cases the Louisiana courts have seldom cited the articles on redhibitory defects. In Doyle v. Fuerst & Kraemer, Ltd., 1911, 129 La. 838, 56 So. 906, 40 L.R.A.,N.S., 480, one of the two leading cases in Louisiana, although the court used some of the codal language, the court did not mention the articles on redhibition. In that case a restauranteur was both the seller and the manufacturer or fabricator. The warranty against redhibitory vices was therefore unquestionably available to the plaintiff. The court said:
"`The principle which governs in this case is that every one ought to know the qualities, good or bad, of the things which he fabricates in the exercise of the art, craft, or business of which he makes public profession, and that lack of such knowledge is imputed to him as a fault, which makes him liable to the purchasers of his fabrications for the damage resulting from the vices or defects thereof which he did not make known to them and which they were ignorant of.
"`This principle obtains both in the civil and the common law, as appears from the excerpts hereinafter given.
*413 "`The measure of damages in a case of this kind, where there was no actual knowledge of the vices of the things sold, but only an imputed knowledge, is not simply reimbursement of the price, as contended by defendant, but liability on the part of the seller for all the damages that were foreseen, or could easily have been foreseen, as likely to result from the putting of the thing sold to the use for which it was sold. This fully appears from the excerpts hereinafter given.
"`It is common knowledge, to which the keeper of a public eating place must be held, that food in which the process of decomposition has begun is liable to make the person who eats it ill. Indeed, we do not think there can be any serious difference of opinion on the point that an eating establishment which sells unwholesome food to be consumed by its customers must be held to have contemplated the probable effects of such tainted food upon the customer. * * *
"`It can be considered to be also well settled at common law that the vendor of articles of food for consumption by the purchaser warrants their wholesomeness.' (We have supplied the emphasis in order to point out that this strict liability is nevertheless dependent on the foreseeability of harm.)
"The court quoted Pothier, Dalloz, Baudry-Lacantinerie & Saignat, Laurent, and Troplong to the effect that when the seller is the one who fabricates the product, he is bound to repair the damage caused by hidden defects, even though ignorant of the defects. The Court's language, especially its frequent use of the words `fabricates' and `fabrication', indicate that the rationale of the decision is that because of the manufacturer's superior position his lack of knowledge is a `fault'. This may be just another way of stating that, for purposes of a warranty against redhibitory vices, the same result may be reached by a conclusive presumption that a seller who is also a manufacturer knows the qualities of the article he fabricates and sells. Under either view there is strict liability for a hidden defect, but Doyle's teaching is that in Louisiana the scope of the liability is limited to defects producing `damages that were foreseen, or could easily have been foreseen.'
"In LeBlanc v. Louisiana Coca Cola Bottling Co., 1952, 221 La. 919, 60 So.2d 873, the other key case in Louisiana, there could not have been an implied warranty against redhibitory vices, even on an assignment theory: no sale was made to the plaintiff. The plaintiff found a decomposed housefly in a bottle which a neighbor gave her. The court allowed recovery on the theory that the manufacturer of foodstuffs in sealed containers or capped bottles `by advertisements extolling the quality of its product' had warranted the `wholesomeness' of its product to consumers. Although the Court did not say so, the advertising might be regarded as the `declaration * * * within the definition of fraud' referred to in Article 2547. In any event the warranty is not the warranty against redhibitory defects. `The theory of the case is based upon tort rather than contract law.'" (See Note, 27 Tul.L.Rev. 370, at page 372.) Justice McCaleb, for the Court said:
"`It is to be borne in mind in these cases that the defendant company is engaged in the business of distributing its beverages to the public in sealed containers or capped bottles and that, by the very nature of its enterprise, its represents, we think, by advertisements extolling the quality of its product, that it is fit for human consumption and free from deleterious matter. And, while there is not a direct contract to this effect between the consuming public and the manufacturer (as it distributes to retailers or middlemen who in turn sell to the consumer), it is fair to imply that, since the manufacturer, in marketing its products in capped bottles, intends them to reach the consumer in the same condition in which they leave the factory, a warranty *414 of wholesomeness exists between it and the consumer.'
"Contrary to previous food products cases in which res ipsa was invoked, the plaintiff was relieved of the burden of proving that a middleman or retailer had not tampered with the bottle; the defendant was saddled with the burden of proving that there was tampering after the bottle left his plant. `Applying the doctrine of implied warranty on a manufacturer of such bottled beverages is almost tantamount to making him an insurer and practically imposing absolute liability on him.'
"In the interim between Doyle and LeBlanc the Louisiana Supreme Court decided only one food case, Mayerhefer v. Louisiana Coca-Cola Bottling Co., 1951, 219 La. 320, 52 So.2d 866. In that case the plaintiff became ill from drinking Coca-Cola containing free iodine. The court treated the problem purely as one in tort. The only question was whether the evidence met the requirements necessary for application of res ipsa loquitur. `Each case', said the court, `involving tort liability stands or falls on the proof made of the facts alleged.'
"Before LeBlanc, Louisiana courts of appeal in food products cases usually based recovery on negligence. After LeBlanc, courts of appeal have allowed recovery on breach of implied warranty treated as a tort. They have had no trouble therefore with privity. In at least one food products case the court said unequivocally, `This is an action in tort by plaintiff.' Morrow v. Bunkie Coca-Cola Bottling Co., 1956, La. App.2 Cir., 84 So.2d 851, 852.
"In Arnaud's Restaurant, Inc. v. Cotter, 5 Cir., 1954, 212 F.2d 883, cert. den'd 348 U.S. 915, 75 S.Ct. 295, 99 L.Ed. 717, this Court reviewed the Louisiana food products cases. This Court noted that although there is a divergence of opinion among the State courts as to whether a manufacturer's liability is predicated upon negligence or an implied warranty, `under Louisiana jurisprudence a plaintiff in such a case is entitled to rely upon the manufacturer's implied warranty.' The warranty is that the `product is safe for human consumption.' The Court held that the question of contributory negligence was for the jury, perhaps an indication that the Court recognized the tortious character of the action."
Considering the Lartigue case, supra, and the cases cited therein, this Court is of the opinion that plaintiffs are entitled to sue the defendants in the instant case for damages for an offense or quasi offense.
Both Vermilion and Iberia Parishes have venue and we are of the opinion that plaintiffs have the right to choose between them in bringing this suit. They could have sued defendant, Liberty Mutual, in East Baton Rouge Parish under the provisions of Section (7) of LSA-C.C.P. Article 42.
The trial court was in error in maintaining the exception of improper venue.
For the reasons assigned, the judgment of the district court is reversed and the case is transferred from the docket of the 16th Judicial District Court in and for the Parish of Iberia, Louisiana, to the docket of the 15th Judicial District Court in and for the Parish of Vermilion, Louisiana, for further proceedings. Costs to await final determination of the matter on its merits.
Reversed and transferred.