403 So.2d 792 (1981)
Joseph A. REEVES, Jr., Plaintiff-Appellee,
v.
DIXIE BRICK, INC., Defendant-Appellant.
No. 14577.
Court of Appeal of Louisiana, Second Circuit.
August 25, 1981.
Rehearing Denied October 1, 1981.
*793 Law Offices of Bobby L. Culpepper by Jimmy C. Teat, Jonesboro, for defendant-appellant.
Law Offices of Joseph A. Reeves, Jr. by Joseph A. Reeves, Jr., New Orleans, for plaintiff-appellee.
Before HALL, JASPER E. JONES and FRED JONES, JJ.
En Banc. Rehearing Denied October 1, 1981.
HALL, Judge.
Plaintiff, Joseph A. Reeves, Jr., brought this suit in the Second Judicial District Court for Jackson Parish against defendants, Hayward Smith, a brick mason, and *794 Dixie Brick, Inc., a manufacturer and seller of bricks, for damages allegedly sustained by him resulting from the defective condition of a fireplace and chimney constructed in plaintiff's home. Plaintiff alleged that the cause of the defective condition was defective workmanship and negligence on the part of Smith and defective bricks manufactured and furnished by defendant, Dixie Brick, Inc. Plaintiff prayed for recovery from Smith for the cost of hiring another bricklayer, recovery from defendants, Smith and Dixie Brick, in solido, for the cost of repairing and restoring the fireplace and chimney, and for attorney fees.
Defendant, Dixie Brick, filed a declinatory exception of improper venue contending that the proper venue for this action is its domicile in Natchitoches Parish and not in Jackson Parish where plaintiff's home is located and where Smith is domiciled. The exception of improper venue was overruled. Defendant Smith answered the suit denying liability and reconvened for an amount allegedly owed him for work done. Dixie Brick also answered denying liability and asserted a reconventional demand against the plaintiff. Dixie Brick also filed peremptory exceptions of no right or cause of action and prescription, which exceptions were referred to the merits and were subsequently overruled.
Prior to trial plaintiff apparently settled his claim against Smith and the case went to trial against Dixie Brick only. After trial the district court found that the excessive cracking and breaking of the bricks was due to the defective manufacture of the bricks, that the bricks were not suitable for the purpose for which they were purchased, that the manufacturer knew or should have known of the defective nature of the bricks, and that plaintiff had suffered damages in the amount of $7,900.50, the estimated cost of repairing the fireplace and chimney. Judgment was rendered in favor of plaintiff against Dixie Brick in the amount of $7,900.50, together with attorney fees in the amount of $2,500. Defendant appealed and plaintiff answered the appeal, asking for an increase in attorney fees for the work done on appeal.
The errors asserted by defendant-appellant on appeal can be summarized as follows:
(1) The trial court erred in not sustaining defendant's exception of improper venue;
(2) The trial court erred in not sustaining defendant's exception of prescription;
(3) The trial court erred in finding that plaintiff carried his burden of proving that the defective condition of the fireplace and chimney was due to defective bricks manufactured and sold by the defendant;
(4) The trial court erred in not finding that plaintiff was contributorily negligent;
(5) The trial court erred in rendering judgment against defendant because the release of one solidary obligor, Smith, without reservation of rights against the other solidary obligor, defendant Dixie Brick, serves to also release the defendant from further liability; alternatively, if plaintiff did reserve his rights against defendant Dixie Brick, the judgment should nevertheless be reduced by one-half because of the release of one of the two solidary obligors; and
(6) The trial court erred in awarding attorney fees in an action of this nature.
Venue
Defendant contends that the trial court should have sustained its exception of improper venue. Defendant argues that under the general rule of venue contained in LSA-C.C.P. Art. 42(1) the proper venue for this action is in Natchitoches Parish, the defendant corporation's domicile. It is defendant's position that the exception to the general rule of venue provided in LSAC. C.P. Art. 73 permitting an action against joint or solidary obligors to be brought in the parish of the domicile of any obligor who is made a defendant is not applicable here because defendant Dixie Brick and the defendant brick mason are not joint or solidary obligors. Defendant further argues the inapplicability of the exception to the general rule of venue contained in LSAC. C.P. Art. 74 which provides that an action for the recovery of damages for an offense or quasi offense may be brought in the *795 parish where the wrongful conduct occurred or in the parish where the damages were sustained, because the instant action is an action ex contractu and not an action ex delicto.
The exception of improper venue was correctly overruled by the trial court because Jackson Parish, where the suit was brought, is a parish of proper venue under both Article 73 and Article 74 of the Code of Civil Procedure.
Plaintiff's petition alleges that the defects in the fireplace and chimney were caused by the combined negligence and improper workmanship of the brick mason and the furnishing of defective bricks by the manufacturer who knew or should have known of the defective condition of the bricks. The petition contains sufficient allegations of the joint or solidary liability of the named defendants and no evidence was offered at the trial of the exception to disprove these allegations. Where the combined fault of a contractor and a manufacturer of materials results in a loss for which each defendant would be liable for the whole, the defendants' liability may be solidary. See Town of Winnsboro v. Barnard & Burk, Inc., 294 So.2d 867 (La.App. 2d Cir. 1974), writ refused 295 So.2d 445 (La.1974); LSAC.C. Arts. 2091 and 2324. It matters not that the respective defendants' obligation to repair the loss arises separately from an offense or quasi offense, or from a contract, or both.
The fact that the contractor was subsequently dismissed from the suit and that the evidence at trial on the merits ultimately established lack of joint fault or solidary liability between defendant and the contractor does not serve to make venue improper. Once venue is determined to be proper on allegations or facts developed at trial of the exception of improper venue, venue does not become improper by reason of a later change of facts or establishment of different facts. See LSAC.C.P. Art. 73.
Venue is also proper in Jackson Parish where the wrongful conduct occurred and where the damages were sustained. Plaintiff's action for recovery of damages arising out of the sale of a defective product which the manufacturer knew or is presumed to have known was defective, although characterized by plaintiff primarily as a redhibitory action, smacks of both tort (offense or quasi offense) and contract. Recovery could be allowed under either or both theories. Where a plaintiff institutes an action on more than one claim or theory of recovery arising out of one factual circumstance and where venue is proper as to any claim or theory of recovery, the court has venue of the action to decide any or all claims. Albritton v. McDonald, 363 So.2d 925 (La.App. 2d Cir. 1978), writ refused 366 So.2d 561 (La.1979); Smith v. Baton Rouge Bank & Trust Company, 286 So.2d 394 (La.App. 4th Cir. 1973); Broussard v. Liberty Mutual Insurance Company, 210 So.2d 411 (La.App. 3d Cir. 1968). This result is consistent with the venue articles, the liberal construction or procedural rules and judicial efficiency and economy.
Support for our holding that plaintiff's action is of a hybrid nature, sounding in both tort (offense or quasi offense) and in contract, is supported by several recent cases which, although not dealing with venue issues, recognize that a single set of facts and circumstances may give rise to an action grounded in either tort or contract or both. In Free v. Franklin Guest Home, Inc., 397 So.2d 47 (La.App. 2d Cir. 1981) we noted that the same acts or omissions may constitute breaches of both general and contractual duties and may give rise to both an action in tort and an action in contract. See also Harris v. Bardwell, 373 So.2d 777 (La.App. 2d Cir. 1979). In Philippe v. Browning Arms Company, 395 So.2d 310 (La.1981), the Supreme Court held that there is no compelling reason to require a person injured by a defective product to proceed either in tort or in contract because the seller-manufacturer's act of delivering a defective thing, when he knows of the defect, gives rise to delictual as well as contractual liability.
The exception of improper venue was correctly overruled.
*796 Prescription
Defendant-appellant urges that plaintiff's claim has prescribed because the suit filed November 14, 1978 was filed over a year after the sale and delivery of the bricks in May 1977 and after breakage and cracking of the bricks was discovered in July, or at the latest, in October 1977.
Although there was a high rate of breakage during construction in the summer of 1977, the cracks in the completed fireplace and chimney did not appear until October, after a fire was built in the fireplace. Plaintiff, believing that the problem might be due to lack of air space or insulation between the fire wall and the outside brick wall, had some remedial work done by another brick mason, Hampton. It was only when fires were built in the fireplace in February 1978 and additional cracks developed that plaintiff had solid reason to believe the bricks themselves were defective. It was not until this time that it can be said that plaintiff discovered the vice, that is, the defective nature of the bricks. Suit was filed well within one year after that discovery. See LSAC.C. Arts. 2534, 2545, and 2546.
The exception of prescription was correctly overruled.
The Merits
In May 1977 plaintiff purchased from the defendant approximately 35,000 bricks to be used in the construction of his new home. Plaintiff contracted with Smith to lay the brick for the new home in accordance with specifications given to Smith by the plaintiff. After a load of bricks had been delivered to the job site by defendant, Smith began construction of the fireplace and chimney. Upon breaking open the bundles of brick, Smith noticed that there was an unusually high amount of breakage among the bricks. Smith called this to the attention of plaintiff who contacted defendants' representative, Jack King. King agreed to deliver another 9,200 bricks to the job site to replace those that had been broken during shipment or the unloading process. Defendant's representative also indicated to plaintiff that the defendant had been having trouble with its kiln during the time the bricks which were delivered to plaintiff were manufactured. Smith continued construction of the chimney and fireplace and completed his work in the latter part of the summer.
Later, during October 1977, a small fire was built in the fireplace by plaintiff's carpenters. Cracks immediately developed in and around the chimney area both inside and outside the house. Plaintiff contacted Smith who refused to return to inspect the problem. Plaintiff hired another bricklayer, Gene Hampton, to tear out the back of the chimney and portions of the front chimney around the mantel and to reconstruct these portions of the chimney.
In tearing out the back of the chimney, Hampton noticed that no air space had been left between the fire brick and the back wall of the chimney and that the damper had been improperly placed in the chimney. Hampton then rebuilt the chimney leaving proper air space filled with insulation behind the fire box and correcting the position of the damper.
After the reconstruction of the chimney and after allowing for the recommended delay prior to use, plaintiff built another fire in the fireplace and the chimney cracked again in the area of the mantel, the back and both sides of the chimney. Because the cracking occurred again in the same fashion as it had the first time, plaintiff determined that the cracking of the brick in the walls of his home could have been caused by defects in the brick. Therefore, plaintiff contacted Dixie Brick's representative, Jack King, to complain of the cracking. Finally, because Dixie Brick had taken no action, plaintiff made written demand upon the defendant for repair or for damages in the way of cost of repair. At this point Dixie Brick sent a civil engineer to the premises to inspect and examine the cracking.
The civil engineer sent a report of his findings to Dixie Brick and this report was filed into evidence along with the civil engineer's deposition. The report and the deposition *797 clearly indicate that the civil engineer found that the cracking problem was not the result of soil settlement; nor was the problem caused by the manner in which the fireplace and chimney were constructed. The engineer concluded after inspecting the brick and the cracks in the bricks in plaintiff's house, that the brick did not have the proper amount of tensile strength and that the bricks had probably not been properly fired.
The conclusions of the civil engineer were supported by the testimony of a local contractor who stated that during the time period involved, he had experienced the same problems with brick breaking and cracking in his use of bricks manufactured by Dixie Brick. Additionally, Jack King testified that during the time period in question defendant was having trouble with a large amount of breakage in the bricks they manufactured and, consequently, changed their procedures for manufacturing the bricks.
The trial court concluded, based on the deposition of the civil engineer and the corroborative testimony given by the local contractor, that the bricks delivered to plaintiff's job site were defective and were not suitable for the purpose for which they were purchased and used. The defects in the bricks were found to be the cause of the cracking in the walls, chimney, and fireplace of plaintiff's house. The record amply supports the facts as found by the trial court and we find no manifest error in his decision.
Contributory Negligence of the Plaintiff
Defendant contends that the plaintiff was contributorily negligent because he failed to halt construction once it was brought to his attention that there was an unusual amount of breakage in the bundles of bricks delivered to the job site by the defendant. Defendant contends that plaintiff should have been aware that the bricks were possibly defective because of the unusual amount of breakage. Assuming, but specifically without so holding, that contributory negligence might be an appropriate defense in a case of this nature, the evidence does not support defendant's contentions and does not establish that plaintiff was negligent in any fashion. As noted above in the discussion of the prescription issue, plaintiff did not have good reason to believe the bricks were defective until the cracks developed after construction was complete.
Release of Smith
Defendant contends that the trial court should not have rendered judgment against it because plaintiff's release of Smith, a solidary obligor, without reservation of rights against the defendant, serves also to release the defendant from further liability. The defendant argues in the alternative that if plaintiff did reserve his rights against it, the judgment should be reduced by one-half because of the release of one of the two solidary obligors. See LSAC.C. Arts. 2103 and 2203. Our review of the record reveals that, although there is reference to plaintiff's settlement with Smith in the testimony of Smith, the release itself was not filed into evidence and Smith was not formally dismissed from the suit. Even if plaintiff did release Smith without reserving his rights against the defendant, the defendant cannot prevail on this point because the evidence does not establish that Smith and the defendant are solidary obligors. The defendant attempted to establish that the cause of the cracking of the bricks was Smith's poor workmanship and negligence rather than the defective nature of the bricks supplied by the defendant; therefore, the issue of Smith's responsibility and, consequently, the solidary liability, vel non, of Smith and the defendant was fully litigated. See Wall v. American Employers Insurance Company, 386 So.2d 79 (La.1980). The evidence does not show the defective condition of the fireplace was caused by any fault on the part of Smith; hence, there is no solidary liability. Defendant's argument that the release of Smith also served to release it from further liability, or that the judgment against the defendant should be reduced by one-half because of the release of Smith, is without merit.
*798 Attorney Fees
Defendant argues that plaintiff is not entitled to attorney fees under LSA C.C. Art. 2545 because the defendant was not aware of the vice or defect in the bricks sold to plaintiff. In this case, however, the defendant was not only the seller of a defective product but was also the manufacturer of that product. The courts have consistently held that manufacturers are presumed to know of the defects of their products. See Radalec, Incorporated v. Automatic Firing Corporation, 228 La. 116, 81 So.2d 830 (1955); Weber v. Fidelity & Casualty Insurance Co. of N. Y., 259 La. 599, 250 So.2d 754 (1971) and cases cited therein. Therefore, under LSAC.C. Art. 2545 plaintiff is entitled to recover reasonable attorney fees from the defendant-manufacturer.
Defendant also draws our attention to the case of Martin v. AAA Brick Company, Inc., 386 So.2d 987 (La.App. 3d Cir. 1980), in which the court refused to award attorney fees to the plaintiff. In that case plaintiff filed suit against a brick contractor seeking damages for poor workmanship in the construction of a fireplace. That case is easily distinguishable from the case at hand because this suit is against a manufacturer for a defective product, not against a contractor for defective workmanship. Here, the plaintiff sued the defendant-manufacturer for damages resulting from the defects in the defendant's product and attorney fees are clearly allowable under Article 2545.
Plaintiff answered this appeal seeking an increase in attorney fees for services performed on appeal. The trial court awarded plaintiff attorney fees in the amount of $2,500. We will increase this award to $3,000 to cover services rendered on appeal. Alexander v. Burroughs Corporation, 359 So.2d 607 (La.1978); Dunlap v. Chrysler Motor Corp., 299 So.2d 495 (La.App. 4th Cir. 1974), writs denied 302 So.2d 38 (La.1974).
For the reasons assigned in this opinion, the judgment of the trial court is amended to increase the award of attorney fees to $3,000 and is otherwise affirmed. Costs of this appeal are assessed to defendant-appellant, Dixie Brick, Inc.
Amended, and as amended, affirmed.