509 So.2d 12 (1987)
Robert BELSER, M.D.
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, et al.
CA 860302.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
*13 Daniel Reed, Baton Rouge, for appellants Dr. Eugene Berry & St. Paul Fire & Marine Ins. Co.
Paul DuÉ, Baton Rouge, W. Hugh Sibley, Greensburg, for appellee Robert Belser.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
LANIER, Judge.
This is an appeal from a trial court judgment which overruled a declinatory exception raising the objection of improper venue.

FACTS
The plaintiff, Dr. Robert Belser, is a resident of St. Helena Parish. In his petition for damages, as amended, he makes the following factual allegations:
2.
Plaintiff avers that he was hospitalized at Baton Rouge Baton Rouge [sic] General Hospital in Baton Rouge, East Baton Rouge Parish, Louisiana, where he underwent surgery on May 18, 1983, performed by defendant, Dr. B. Eugene Berry, M.D., for elective bypass surgery procedure. During the surgery, plaintiff was placed on cardiopulmonary bypass equipment used at Baton Rouge General Hospital, portions of which were manufactured by defendants Bard Cardiopulmonary, Extracorporeal Medical Specialties, Inc., Sarns Inc., Shiley, Inc., Texas Medical Products, Inc. and PQR Corporation.
3.
Plaintiff avers that there were in the aforementioned equipment which contributed to plaintiff's suffering either diminished blood supply to his eyes or caused or permitted foreign objects or particles or part of some form of ambylus to break loose and impair plaintiff's circulatory system, resulting in ultimately-diagnosed permanent impaired vision suffered by plaintiff.

*14 4.
Plaintiff further avers that defendant, Dr. B. Eugene Berry, M.D., breached applicable standards of professional care owed to plaintiff, including failure to obtain plaintiff's informed consent, failure to advise plaintiff of the possibility of plaintiff ultimately losing his eyesight while undergoing an elective bypass operation, failure to perform the surgery in a proper manner and other acts of negligence which will be established at trial herein.
....
9.
Plaintiff ultimately had diagnosed that his impaired vision was permanent, which resulted while plaintiff initially being discharged from Baton Rouge General Hospital on May 25, 1983, was able to resume his general surgical practice, thereafter he was unable to continue to do so, and ultimately suffered such financial reversals owing to loss of his surgical profession that he was forced into bankruptcy.
....
10.
Plaintiff accordingly avers entitlement to recover damages from all defendants, insolido, [sic] as follows:

A. Damages for permanent vision ultimately
 rendering plaintiff legally blind $1,000,000.00
B. Pain suffering, past and future $500,000.00
C. Mental anguish and distress, past and
 future $1,000,000.00
D. Loss of income, past and future $5,000,000.00
E. Medical expenses, past and future
 (estimated) $100,000.00
 _____________
 TOTAL $7,600,000.00

Dr. Belser was the only witness to testify at the trial of the exception. His testimony, coupled with the above allegations, gives the following factual scenario. Dr. Belser established his medical practice in St. Helena Parish in December of 1967. In December of 1978, Dr. Belser went to Ramrock, Texas, but returned to St. Helena Parish in February of 1983. Dr. Belser had a heart attack on April 16, 1983, and was treated at the Lady of the Lake Hospital in Baton Rouge by a Dr. Woodard. Dr. Belser then consulted with Dr. Berry about elective bypass surgery. This surgery was performed on May 13, 1983, at the Baton Rouge General Hospital. Shortly after this surgery, Dr. Belser was examined by an ophthalmologist. Dr. Belser was discharged from Baton Rouge General Hospital on May 25, 1983. Dr. Belser saw an ophthalmologist on May 31, 1983, for postoperative visual difficulties. Dr. Belser's visual difficulties worsened, and this visual impairment caused his surgical practice to diminish to nothing.

PROCEDURAL FACTS
This suit was filed in St. Helena Parish, the domicile of the plaintiff. Dr. Berry, a resident of East Baton Rouge Parish, and his foreign insurer filed a declinatory exception raising the objection of improper venue and a peremptory exception raising the objection of no right of action. The former contends the proper venue for the suit is East Baton Rouge Parish, pursuant to La.C.C.P. art. 42, and the latter contends Dr. Belser has no right of action because he filed a petition in bankruptcy and the proper party plaintiff would be the bankruptcy trustee.
After a hearing, the trial court found that the bankruptcy proceedings were concluded prior to the time this suit was filed and Dr. Belser had a right to bring this action. The trial court also found that, although the surgery occurred in East Baton Rouge Parish, Dr. Belser was damaged in St. Helena Parish because his vision degenerated in St. Helena Parish and he lost his medical practice in St. Helena Parish. The trial court held St. Helena Parish was a parish where the damages were sustained, as provided in La.C.C.P. art. 74, and, thus, was a proper venue. Judgment was rendered overruling the exceptions. This devolutive appeal followed.
Dr. Belser filed a motion to dismiss the appeal, contending the trial court judgments were interlocutory and, thus, were not appealable. This court held that, although a judgment overruling a declinatory exception raising the objection of improper *15 venue was interlocutory, it could cause irreparable injury and, therefore, it was appealable. This court also held the judgment overruling the peremptory exception raising the objection of no right of action was interlocutory, it would not cause irreparable injury and it was not appealable. The appeal was maintained for the declinatory exception and dismissed for the peremptory exception. Belser v. St. Paul Fire & Marine Insurance Company, 492 So.2d 198 (La.App. 1st Cir.1986).

OBJECTION OF IMPROPER VENUE
The appellants contend the trial court ruling and rationale are in error citing King v. National Bank of Bossier City, 420 So.2d 1024 (La.App. 5th Cir.1982); Foster v. Breaux, 238 So.2d 803 (La.App. 1st Cir.1970); Coursey v. White, 184 So.2d 625 (La.App. 4th Cir.1966); and Town of Eunice v. M & L Construction Company, 123 So.2d 579 (La.App. 3rd Cir.1960). The appellee contends the trial court ruling and rationale are supported by Thibodeaux v. Hood Enterprises, Inc., 415 So.2d 530 (La. App. 1st Cir.1982); Reeves v. Dixie Brick, Inc., 403 So.2d 792 (La.App. 2nd Cir.1981); Hunter v. Office of Health Services and Environmental Quality of Dept. of Health & Human Resources, 385 So.2d 928 (La.App. 2nd Cir.1980), writ denied, 393 So.2d 737 (La.1980); Broussard v. Liberty Mutual Insurance Company, 210 So.2d 411 (La.App. 3rd Cir.1968); and the concurring opinion in Erdey v. American Honda Co., Inc., 415 So.2d 449 (La.App. 1st Cir.1982).
Venue means the parish where an action or proceeding may properly be brought and tried pursuant to the rules regulating the subject. La.C.C.P. art. 41. The objection of improper venue raised in a declinatory exception declines the jurisdiction of the court because the action has not been filed in the correct parish. La.C.C.P. arts. 923 and 925(4).
The defendants in this suit are as follows: Dr. B. Eugene Berry, a resident of East Baton Rouge Parish; Dr. Berry's insurer, St. Paul Fire & Marine Insurance Company (St. Paul), a foreign insurance corporation authorized to do business in Louisiana; Bard Cardiopulmonary, Extracorporeal Medical Specialties, Inc., Sarns, Inc., Shiley, Inc. and Texas Medical Products, Inc., which are alleged to be foreign corporations not licensed to do business in Louisiana, but amenable to personal jurisdiction under the Louisiana Long Arm Statute, La.R.S. 13:3201 et seq.; and the ABC, DEF, GHI, JKL and MNO Insurance Companies, alleged to insure the unlicensed foreign corporations. It is uncontested that the alleged wrongful conduct occurred in East Baton Rouge Parish.
La.C.C.P. art. 42 is the general rule for venue and provides, in pertinent part, as follows:
The general rules of venue are that an action against:
(1) An individual who is domiciled in the state shall be brought in the parish of his domicile; ...
....
(5) Except as otherwise provided by R.S. 13:3471(1), a foreign corporation not licensed to do business in the state, or a nonresident who has not appointed an agent for the service of process in the manner provided by law, other than a foreign or alien insurer, shall be brought in a parish where the process may be, and subsequently is, served on the defendant;
....
(7) A foreign or alien insurer shall be brought in the parish of East Baton Rouge.
La.C.C.P. art. 74 is a special venue rule, which provides, in pertinent part, as follows:
An action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained....
The plaintiff in this suit may bring this action in any venue authorized by Articles 42 and 74. La.C.C.P. art. 45(3). Where the defendants are joint or solidary obligors, the action may be brought in any parish of proper venue under Article 42. La.C.C.P. *16 art. 73. However, the venue rules of Articles 71 through 83 are exceptions to the general venue rule of Article 42; as exceptions, they are in derogation of a common right; the jurisprudence requires a strict construction of the venue exceptions; and a party claiming the benefit of an exception (such as Article 74) must bring himself clearly within the exception. Hawthorne Oil and Gas Corporation v. Continental Oil Company, 377 So.2d 285 (La.1979); Parker v. Parker, 432 So.2d 1010 (La.App. 1st Cir.1983); Edmond v. Webre, 413 So.2d 306 (La.App. 3rd Cir.1982).
To properly interpret Article 74, we must endeavor to determine what constitutes "the parish where the wrongful conduct occurred" and what constitutes "the parish where the damages were sustained." A review of the legislative history of Article 74 is helpful to properly analyze the jurisprudence which interprets it.
The statutory source of Article 74 was Article 165(9) of the Louisiana Code of Practice of 1870, which provided as follows:
In all cases where any person, firm or domestic or foreign corporation shall commit trespass, or do anything for which an action for damage lies or where any domestic or foreign corporation shall fail to do anything for which an action for damage lies, such person, firm or corporation may be sued in the parish where such damage is done or trespass committed or at the domicile of such person, firm or corporation. [Emphasis added.]
Article 165(9) was the basis for the opinion in the Town of Eunice case. The municipality of Eunice sued a partnership for damages for the defective performance of a contract to install a sewer system. The suit was brought in St. Landry Parish (where the defective performance occurred), and not in the domicile of the partnership, Vermilion Parish. The court discussed the existing law and the issue to be decided as follows:
The only distinction drawn by the terms of the quoted codal provisions as between suits against corporate defendants and those against non-corporate defendants is that non-corporate defendants may be sued in the parish where the damage is done for damages caused by acts of commission only (where they `do anything for which an action for damage lies'), whereas corporate defendants may additionally be sued at such venue for damages caused by acts of omission (where they `fail to do anything for which an action for damage lies').... Incidentally, the parish where the `damage is done' is, for purposes of this codal article, `the parish in which the negligence, or the failure in the performance of a duty, occurred,' O'Brien v. Delta Air Corporation, above-cited at [188 La. 911] 178 So. 492.
....
Therefore the question presented to us in this matter narrows down to a determination of whether the allegations of the petition show that the damages for which recovery is sought resulted from acts of commission rather than of omissionthat is, from something done in St. Landry Parish rather than from something not done there. [Bolding added.]
Town of Eunice, 123 So.2d at 581-582.
The court found that the allegations of the petition charged the partnership with damage-causing acts of commission in St. Landry Parish and that venue was proper under Article 165(9). The fact that St. Landry Parish was the parish where the damage was done was not disputed, and the language concerning this is dictum.
The official revision comment for La.C. C.P. art. 74 provides as follows:
Several changes are made by this article. The source article applied to acts of commission of individuals, partnerships, and corporations, but to acts of omissions of corporations only.... The `wrongful conduct' of the above article applies to acts of both omission and commission, and applies equally to all defendants.
The source article was interpreted as applying to actions for damages ex contractu as well as those ex delicto.... As this rule was considered very difficult to apply, the above article limits its application *17 to damages resulting from offenses and quasi offenses.
See also Clement v. Redi-Bilt Corporation, 249 So.2d 607 (La.App. 4th Cir.1971). Apparently, the change in language from "the parish where such damage is done" of Article 165(9) to "the parish where the damages were sustained" of Article 74 was not intended to be a substantive change.
In Coursey v. White, the plaintiffs were residents of East Baton Rouge and Orleans Parishes. They filed suit in Orleans Parish against a resident of Livingston Parish for mental anguish and damages to credit ratings resulting from a wrongful seizure of land located in Livingston Parish. The court held Orleans was an improper venue with the following rationale:
If the plaintiffs had sought damages herein for the actual wrongful seizure, the result would be relatively clear. The proper venue under such circumstances would have been the parish where the seizure occurred, and the damages indirectly resulting therefrom, such as mental anguish and loss of credit rating, would have to be litigated and recovered or refused in connection therewith.
However, the plaintiffs only request recovery for injuries which emanate indirectly from or as an element of the main damage. Moreover, a significant consideration herein is the nature and character of the damages incurred. Edwards asserts that his credit rating was injured in Orleans Parish, thereby creating the proper venue. However, suffice it to say that if his credit rating was injured locally, it necessarily follows that it was injured in every parish throughout the state. Under this hypothesis, the plaintiff could choose any parish in Louisiana and sue therein for the damages which he incurred to his credit rating.
A similar situation exists with respect to the plaintiffs' claim for mental anguish as a result of the seizure in Livingston Parish. Mental anguish is `sustained' wherever the person suffering therefrom happens to be when it occurs. If by chance the plaintiffs had been in Allen Parish, Lafourche Parish, or West Carroll Parish, for example, when they learned of the illegal seizure, the damage for mental anguish would have been `sustained' in those locations and not in Orleans Parish.
In our opinion, it is quite obvious that Article 74 of the Code of Civil Procedure was never intended by the redactors thereof or by the legislature to permit a plaintiff to litigate in any parish of the state so capriciously or that in order to do so he should be permitted to divide the main damage from an element thereof in order to choose his venue.
Coursey, 184 So.2d at 627.
However, the court did not consider the Town of Eunice case and carefully limited the case holding to its facts.
In Foster v. Breaux, a plaintiff domiciled in Tangipahoa Parish filed suit in Tangipahoa Parish against defendants domiciled in Lafourche and Terrebonne Parishes, alleging that false accusations made in Plaquemines Parish by the defendants resulted in the plaintiff losing his job. The plaintiff contended his damages were sustained in Tangipahoa Parish where he resided because it was there that he suffered monetary losses, embarrassment, mental anguish and inability to secure employment. This court, relying heavily on Coursey v. White, held Tangipahoa Parish was an improper venue.
In King v. National Bank of Bossier City, the defendant, domiciled in Bossier Parish, filed theft charges in Bossier Parish against a St. Charles Parish resident (and former employee) who was subsequently arrested in St. Charles Parish. After the charges were dropped, the defendant's personnel manager called the plaintiff's new employer and asked if the new employer was aware of the charges. The St. Charles Parish resident filed suit in St. Charles Parish claiming false arrest and invasion of privacy and seeking damages for cost of criminal defense, loss of wages, embarrassment, humiliation and attorney fees. The court relied on Town of Eunice and held St. Charles Parish was an improper venue with the following rationale:

*18 The only activity that Mrs. King can be heard to complain about in St. Charles Parish would be her actual arrest. Under Article 74 of the Louisiana Code of Civil Procedure, the wrongful conduct must occur or the damages must be sustained in the parish where suit is filed. In this case, the conduct of the authorities in St. Charles Parish cannot be alleged wrongful. They were only acting on a warrant pursuant to theft charges filed in Bossier Parish. Any wrongful conduct would have been in the parish where charges were filed.
Likewise, under Town of Eunice vs. M & L Construction, supra, the parish where damages were sustained would be the parish where negligence, or the failure in performance of a duty occurred. Any negligence or failure to perform a duty in this case would have occurred in Bossier Parish, where charges were filed, and not in St. Charles Parish. For these reasons, it is clear to us that the court of proper venue would be the district court in Bossier Parish. La.C.C.P. art. 74.
King, 420 So.2d at 1026.
In Williams v. Crown Zellerbach Corporation, 443 So.2d 607 (La.App. 1st Cir. 1983), a plaintiff domiciled in St. Tammany Parish filed suit in St. Tammany Parish against a foreign corporation with its principal place of business located in Washington Parish contending he was injured while transporting toxic materials from the defendant's plant in Washington Parish. The plaintiff contended that, although he was directly exposed to the toxic materials in Washington Parish, the effect of the exposure continued at his home in St. Tammany Parish and resulted in lung disease. This court held St. Tammany Parish was an improper venue with the following rationale:
Initially, it must be pointed out that La.C.C.P. art. 74 is an exception to the general rules of venue established by La.C.C.P. art. 42, and as such, art. 74 must be strictly construed.... Plaintiff's only basis for contending that venue is in St. Tammany under art. 74 is his argument that `the damages were sustained' there. In support of this contention plaintiff argues in brief that the corrosive effect of the Washington Parish exposure continued at his residence in St. Tammany causing his lung disease, and thus his damages were `sustained' there. Yet plaintiff has not alleged or introduced any evidence that his damages were sustained in St. Tammany Parish.
Under the circumstances in this record, we feel plaintiff has not alleged or shown any facts that would support application of the art. 74 exception to the general venue rules of art. 42.
Williams, 443 So.2d at 608.
In Lapeyrouse v. United Services Automobile Association, 503 So.2d 627 (La.App. 4th Cir.1987), an Orleans Parish plaintiff filed suit in Orleans Parish against Jefferson Parish defendants and their foreign insurer, seeking damages from an automobile accident that occurred in Jefferson Parish. The Orleans plaintiff contended Orleans was a proper venue because she incurred medical expenses there and endured pain and suffering there. The court cited Town of Eunice and Coursey v. White and held Orleans Parish was an improper venue with the following rationale:
In the context of this case we interpret the phrase `where the damages are sustained' to mean the place where the negligence or breach of duty which caused the damage occurred. See, Town of Eunice v. M & L Construction Co., 123 So.2d 579 (La.App. 3rd Cir.1960). To interpret Article 74 in the fashion plaintiff suggests would result in venue being proper wherever she had her car repaired, or wherever she may happen to be when pain occurs. This certainly was not the intent of the legislature.
Lapeyrouse, 503 So.2d at 628.
The common thread that runs through the Coursey-Foster-King-Williams-Lapeyrouse line of cases is that, if any damage is caused to the plaintiff in the parish where the wrongful conduct occurred, that parish, and no other, is "the parish where the damages were sustained" *19 for purposes of Article 74. This holding is consistent with the jurisprudence that Article 74 must be strictly construed. This holding evidences public policy determinations by the Coursey-Foster-King-Williams-Lapeyrouse courts that forum shopping should be minimized in actions for the recovery of damages for offenses and quasi offenses.
In Broussard v. Liberty Mutual Insurance Company, an Iberia Parish defendant manufactured and sold poisonous cattle feed in Iberia Parish. The plaintiff's registered bull ate the feed and died in Vermilion Parish. Plaintiff filed suit in Vermilion Parish; defendant objected to the venue, contending the case was an implied warranty case in contract and was not a tort case controlled by Article 74. The court held the case was a tort case, Article 74 applied and either Iberia or Vermilion Parish was a proper venue.
In the Hunter case, a DeSoto Parish plaintiff had a mole removed in DeSoto Parish. The excised mole was sent to a state laboratory in Orleans Parish for a biopsy. The mole was diagnosed as benign when in fact it was cancerous. Three years later, the plaintiff was diagnosed as having mestastic cancer which came from the site of the excised mole. Treatment was attempted, but failed, and the plaintiff died. Suit was filed in DeSoto Parish. On the issue of venue, the court observed as follows:
Appellants specify as error the trial judge overruling their exception of improper venue. We find C.C.P. Art. 74 to be applicable in this case. This article provides for an action on offense or quasi offense to be brought in `the parish where the wrongful conduct occurred,' or in `the parish where the damages were sustained.' The record clearly shows the damages were sustained in DeSoto Parish, domicile of Mrs. Hunter, and therefore the trial judge correctly disposed of the issue.
Hunter, 385 So.2d at 936.
In Reeves v. Dixie Brick, Inc., a Jackson Parish plaintiff filed suit in Jackson Parish against a Natchitoches Parish brick manufacturer and seller and a Jackson Parish brick mason, contending the defective condition of the fireplace and chimney in his home in Jackson Parish was caused by the negligence and defective workmanship of the brick mason and the defective bricks sold by the manufacturer. The manufacturer objected to the venue in Jackson Parish, contending La.C.C.P. art. 73 was not applicable because it was not solidarily liable with the brick mason, and Article 74 was not applicable because the suit was an action ex contractu and not an action ex delicto. The court held the venue was proper under both Articles 73 and 74 because the manufacturer and brick mason were liable in solido, the action was ex contractu and ex delicto and Jackson Parish was the place where the wrongful conduct occurred and where the damages were sustained.
In Thibodeaux v. Hood Enterprises, Inc., a Lafourche Parish plaintiff filed suit in Lafourche Parish against a Livingston Parish manufacturer, contending the manufacturer sold and delivered a log homebuilding kit to the plaintiff in Livingston Parish, the plaintiff erected the home in Lafourche Parish according to specifications and, thereafter, the logs shrank, causing large gaps in the walls which resulted in damage to the plaintiff's furnishings and carpets. The manufacturer objected to the venue in Lafourche Parish. The trial court found that Article 74 was not applicable because the petition did not state a cause of action in tort. This court cited Reeves and reversed with the following rationale:
The Second Circuit was recently confronted with whether an action in redhibition is ex contractu or ex delicto. Reeves v. Dixie Brick, Inc., supra. The factual situation in Reeves was strikingly similar to the facts here, as the plaintiff sued the seller-manufacturer of certain bricks which were used in the construction of his fireplace. He claimed that the bricks were defective and that the defendant knew or should have known of the defective condition. The suit was filed in the plaintiff's domicile and the defendant excepted to the venue, claiming that La.C.C.P. Art. 74 was not applicable *20 in the redhibition suit. The court stated that an action in redhibition `... is of a hybrid nature, sounding in both tort (offense or quasi offense) and in contract...,' and held that La.C.C.P. Art. 74 provided an additional venue. Reeves, supra, at 795.
The Louisiana Supreme Court stated in Philippe v. Browning Arms Company, 395 So.2d 310 (La.1981), a personal injury action, that a seller-manufacturer's act of delivering a defective thing, when he knows of the defect, gives rise to delictual as well as contractual liability. We agree with Philippe and Reeves which support a finding that La.C.C.P. Art. 74 provides a proper venue in redhibition suits and hold that the exception of improper venue should have been overruled.
Thibodeaux, 415 So.2d at 531-532.
In Erdey v. American Honda Co., Inc., a Livingston Parish plaintiff filed suit in Livingston Parish, contending his leg was broken in a motorcycle accident in Livingston Parish. He sought treatment for his leg in East Baton Rouge Parish and medical malpractice in East Baton Rouge Parish resulted in amputation of the leg. Some of the medical malpractice defendants objected to the venue in Livingston Parish. The majority opinion holds the venue is proper for the products liability defendants because Livingston Parish is where the damages therefor were sustained, the products liability defendants were liable in solido with the medical malpractice defendants for the aggravation of the plaintiff's condition caused by the medical malpractice and, therefore, venue was proper under Article 73. The majority declined to address Article 74. Therefore, Erdey is not controlling herein.
The common thread running through the Broussard-Hunter-Reeves-Thibodeaux line of cases is that where no damage is caused to the plaintiff in the parish where the wrongful conduct occurred, a parish where the damages were sustained is a proper venue. Broussard, Reeves and Thibodeaux were products liability cases that did not involve personal injury. Coursey, Foster, King, Williams and Lapeyrouse were not products liability cases, but did involve personal injury.
We believe the instant case is controlled by the Coursey-Foster-King-Williams-Lapeyrouse line of cases. The petition asserts specifically that defects in the cardiopulmonary bypass equipment at the Baton Rouge General Hospital in East Baton Rouge Parish "contributed to plaintiff's suffering [by] either diminished blood supply to his eyes or caused or permitted foreign objects or particles or part of some form of ambylus to break loose and impair plaintiff's circulatory system, resulting in ultimately-diagnosed permanent impaired vision." The trauma (damage) which ultimately caused the vision loss occurred in East Baton Rouge Parish. Since the alleged wrongful conduct and the initial damage occurred in East Baton Rouge Parish, it is the only proper venue under Article 74. The fact that the initial damage progressed thereafter in St. Helena (or any other) Parish does not make such parish a parish "where the damages were sustained" for purposes of Article 74.
Accordingly, we conclude the judgment of the trial court which overruled the declinatory exception raising the objection of improper venue is wrong and must be reversed.
When an action is brought in a court of improper venue, an appellate court has the discretion to dismiss the action or, in the interest of justice, transfer it to a court of proper venue. La.C.C.P. art. 121; Lapeyrouse, 503 So.2d at 628. We elect to transfer this case to a proper venue.

DECREE
For the foregoing reasons, the judgment of the trial court overruling the declinatory exception is reversed, and judgment is entered herein sustaining the exception and remanding this action to the Nineteenth Judicial District Court, Parish of East Baton Rouge, for further proceedings. The clerk of this court is ordered to transfer the record of these proceedings to the Clerk of Court for East Baton Rouge Parish *21 for filing. Dr. Belser is cast for the cost of this appeal.
REVERSED, REMANDED AND TRANSFERRED.