647 So.2d 1260 (1994)
Darryl FRICKE, et al.
v.
OWENS-CORNING FIBERGLASS CORPORATION, et al.
No. 94-CA-0114.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1994.
Theordore A. Mars, Jr., Andrew Blanchfield, Mars & Blanchfield, Sidney L. Shushan, William J. Guste, III, Joseph B. Landry, Guste, Barnett & Shushan, New Orleans, for plaintiffs/appellees.
Charles K. Reasonover, Harry S. Anderson, Deutsch, Kerrigan & Stiles, New Orleans, for defendant/appellant.
Before CIACCO, LOBRANO and PLOTKIN, JJ.
LOBRANO, Judge.
This appeal arises from a judgment dismissing the Vinegar Institute's declinatory exception of Lack of Personal Jurisdiction.[1]

*1261 FACTS AND PROCEDURAL HISTORY:

On May 8, 1987, Melvin Davillier, an employee of Baumer Foods, Inc. descended into an 8,000 gallon fiberglass tank used to mix mustard in an attempt to retrieve a plastic bag which was wrapped around the shaft of the tank. After descending into the tank, Davillier became unconscious. George Fricke, III, foreman in the mustard production unit, also descended into the tank in an attempt to rescue Davillier. During the rescue process, Fricke also became unconscious. Both men were eventually rescued by the New Orleans Fire Department. Both men sustained severe brain damage. Davillier eventually died on October 9, 1988. Fricke never regained consciousness and remains in a brain damaged state, confined to bed since the accident.
The spouse, heirs and legal representatives of Fricke and Davillier filed several lawsuits against various defendants including Baumer Foods, Inc. and Owens Corning Fiberglass Corporation. The separate suits were consolidated in the trial court.
In their Fourth Supplemental and Amending Petition filed April 7, 1993, plaintiffs added several defendants including Donald T. McIntyre, then executive director of the Vinegar Institute and the Vinegar Institute, an unincorporated trade association of vinegar manufacturers and/or their employees or representatives.[2] The Vinegar Institute is a non-profit organization with its offices in Atlanta, Georgia. Between 1984 and 1985, the Vinegar Institute prepared for its members a recommended Material Safety Data Sheet (MSDS) for the handling of vinegar, one of the ingredients used in the manufacture of mustard. The allegations against the Institute essentially assert negligence in the preparation of the MSDS which it recommended to its members. Plaintiffs assert that the manufacturer who supplied Baumer negligently failed to warn of the dangers inherent with the use of vinegar, and that their failure to warn was caused, at least in part, by the faulty MSDS recommended by the Institute.
On July 16th and August 6, 1993, Donald T. McIntyre and the Vinegar Institute filed declinatory exceptions of lack of personal jurisdiction. On September 30, 1993, the trial court maintained Donald T. McIntyre's exception but dismissed the Vinegar Institute's exception. No reasons for judgment were given.
The Vinegar Institute (Institute) appeals the judgment of the trial court asserting that no significant basis exists for asserting personal jurisdiction over it. No appeal was taken on the dismissal of McIntyre.
IN PERSONAM JURISDICTION:
Plaintiffs assert that the Institute had sufficient contacts with Louisiana such that the assertion of personal jurisdiction over it would not offend traditional notions of fair play and substantial justice. In Fox v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 576 So.2d 978, 983 (La.1991), our Supreme Court succinctly analyzed the law of in personam jurisdiction over a non-resident as follows:
"Since the 1987 amendment to LSA-R.S. 13:3201, the sole inquiry in Louisiana into jurisdiction over a nonresident is whether the assertion of jurisdiction complies with constitutional due process. (citation omitted) The limits of the Louisiana long arm statute and the limits of constitutional due process are coextensive and therefore, if the assertion of jurisdiction meets the constitutional requirements of due process the assertion of jurisdiction is authorized under the long arm statute.
The factors recognized in Fox, supra, as determinative of whether personal jurisdiction comports with notions of fair play and substantial justice, are:
(1) The burden on the defendant;
(2) The forum state's interest in the dispute;
(3) The plaintiff's interest in obtaining convenient and effective relief;

*1262 (4) The judicial system's interest in obtaining an efficient resolution of controversies; and
(5) The state's shared interest in fostering fundamental substantive social policies.
Our Courts recognize two different types of personal jurisdiction over a non-resident: general and specific. Babcock & Wilcox v. Babcock Mexico, S.A. de C.V., 597 So.2d 110 (La.App. 4th Cir.1992), writ den., 600 So.2d 679 (La.1992). General jurisdiction arises only when the defendant has engaged in "continuous and systematic general business contacts" with the forum state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 413-416, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); Babcock & Wilcox, supra. Specific jurisdiction occurs when the cause of action arises from or is related to the defendant's purposeful contact with the forum state. For specific jurisdiction to apply, the defendant must have "purposely availed himself of the privilege of conducting business in Louisiana or invoked the benefits and protection of Louisiana law." Babcock & Wilcox, supra. There must exist a "significant relationship" between the non-resident's contacts with the forum state and the cause of action. Clark v. Moran Towing & Transportation Co., 738 F.Supp. 1023, 1026 (E.D.La.1990). The non-resident's activities within the forum state must be such that it is foreseeable that the non-resident could be haled into court. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
The uncontradicted affidavit of Larry Davenport, Executive Director of the Institute, establish the following facts pertinent to resolving the issue.
1) The Institute is an Illinois nonprofit corporation whose offices are located in Atlanta, Georgia.
2) The Institute has never done anything continuously and systematically within the State of Louisiana.
3) The Institute has never had offices, employees, telephone listings, post office boxes, addresses, bank accounts, agents, or books or records in the State of Louisiana.
4) The Institute has never been licensed or qualified to do business in the State, has not and does not pay State taxes, has no salesman or representatives, has not sent representatives, inspectors or servicemen to Louisiana, and has never advertised in the Louisiana media.
5) The Institute has never transacted any business within the state, directly or through an agent.
6) The Institute does not derive any revenue from any source in the State of Louisiana except for dues of one member (out of forty), whose dues (based on sales volume of the member) comprise 2.2% of the total dues collected by the Institute.
7) The Institute has never held any symposia, advertising, lobbying, or other promotional or educational activities in Louisiana.
8) The Institute has never held any meeting in Louisiana except for three meetings of its Scientific Committee which did not deal with the drafting or promulgation of the proposed MSDS and annual meetings in 1974 and 1977 which were not related in any way to the proposed MSDS.
9) The Institute has never contracted to supply any services, goods or things in the State of Louisiana.
10) The Institute has never held any interest in, used or possessed, a real right on immovable property in Louisiana.
11) The Institute has never owned any assets in Louisiana.
We also note that there is absolutely no showing in the record, nor is there any dispute by plaintiffs, that the Louisiana member of the Institute supplied anything (including the MSDS) to Baumer. In fact there is no evidence which indicates from whom Baumer received the MSDS. Plaintiffs' petition alleges that it came from the manufacturer who sold the vinegar to Baumer. Further we note from the affidavit of Donald McIntyre, that meetings of the Institute's Scientific committee occurred on June 9, 1980 and June 20, 1983 in New Orleans, but those meetings did not involve the MSDS, or the *1263 formulation of same.[3]
Our research indicates that Louisiana Courts have never addressed the issue of personal jurisdiction over non-resident trade associations such as the Institute. However, in reviewing the jurisprudence of other jurisdictions, we find that the same requirements of general and specific jurisdiction are uniformly applied to trade associations. A persuasive and analogous case cited by the Institute is Skinner v. Flymo, Inc., 351 Pa.Super. 234, 505 A.2d 616 (1986).
In Skinner, the defendant association was Outdoor Power Equipment Institute, Inc. (OPEI), a non-profit trade association whose members were manufacturers of outdoor power equipment. OPEI sponsored a certification program pursuant to which its members were entitled to submit samples of their products to an independent laboratory for testing. If the product met specified safety standards, the manufacturer could purchase from OPEI a label which contained a certification that the product complied with these standards. Flymo, Inc., an Ohio manufacturer of lawn mowers, was a member of the trade association and routinely purchased labels from OPEI for attachment to its lawn mowers. Flymo's mowers were distributed and sold throughout the United States. Skinner was using a Flymo mower bearing an OPEI label at the time he was injured. Skinner's employer had purchased the mower from a Pennsylvania distributor. In affirming the trial court's judgment that OPEI was not subject to either the general or specific jurisdiction of Pennsylvania the Court stated:
In the instant case, OPEI's only `activity' was the sale of labels to an Ohio manufacturer of lawn mowers. There was no activity whatsoever that was purposefully directed toward residents of Pennsylvania. Indeed, there was only one manufacturer in Pennsylvania who was a member of OPEI, and this manufacturer was not engaged in making walk-behind, power lawn mowers. Even safety standards were not promulgated by OPEI but by an independent organization. The only connection between OPEI's activity as a trade association, i.e., administering the certification program, and the Commonwealth of Pennsylvania was Flymo's fortuitous shipment into this Commonwealth of a lawn mower bearing the OPEI label. This unilateral action of Flymo was insufficient to support jurisdiction over OPEI in Pennsylvania. OPEI itself did not sell or distribute lawn mowers, nor did it do any specific act which was sufficient to render it subject to the in personam jurisdiction of the Pennsylvania courts. Given the tenuous relationship between OPEI's out-of-state certification activities and Skinner's injury in Pennsylvania, it seems clear that OPEI could not reasonably have anticipated being haled into court here. We conclude, as did the trial court, that OPEI did not purposefully establish sufficient minimum contact with Pennsylvania to subject it to specific jurisdiction in this Commonwealth. (emphasis added).
Where a cause of action does not arise out of a nonresident defendant's activities within Pennsylvania, jurisdiction may nevertheless be asserted if the defendant's activities within the Commonwealth, though unrelated to the cause of action, are continuous and substantial. (citations omitted) An examination of decisions in other jurisdictions which have applied this or a similar standard to activities of trade and professional associations is instructive. (footnote omitted) The continuous and substantial contacts necessary to assert jurisdiction over a trade or professional association may be summarized as follows: (1) a *1264 high percentage of the associations' members resided in the forum state. (citations omitted); (2) The associations received substantial income from annual membership dues of members in the forum state, (citations omitted); (3) large sums of money were earned by selling the associations' publications in the forum state, (citations omitted); and, perhaps most significantly, (4) the associations held repeated committee meetings and/or educational symposia in the forum state. (citations omitted) ... at pp. 621, 622.
Factually the court found that OPEI was not incorporated in Pennsylvania, had no offices there, was not qualified to do business, paid no taxes in Pennsylvania, had no officers, agents or employees in the state and shipped no goods into the State. Only one member of OPEI was domiciled in Pennsylvania; that member's dues were trivial. The court concluded that any connection OPEI had with Pennsylvania was "far too tenuous to be deemed continuous and substantial" so as to satisfy the requirements to establish general jurisdiction.[4]
Plaintiffs in the instant case argue that jurisdiction exists because the Institute was negligent in its role in developing the proposed MSDS in that it failed to provide proper first aid and safety measures. In support they refer to the allegations of their supplemental petition and the deposition testimony of Donald McIntyre. Plaintiffs assert that the Institute has failed to rebut their allegations.
Initially, we note that the allegations to which plaintiffs refer address the merits of their claims against the Institute. The issue of whether the Institute was negligent is irrelevant with respect to the jurisdictional question. The same reasoning applies to McIntyre's deposition. Although, as we noted in footnote 3 supra, that deposition was not part of the designated record on appeal, our familiarity with the facts of this case from the previous appeal supports that reasoning. McIntyre's testimony is more directed to the merits of plaintiffs' claims against the Institute than jurisdiction. After review of the record, we find no evidence to support either general or specific in personam jurisdiction over the Institute.
GENERAL JURISDICTION:
The Institute's contacts with Louisiana do not satisfy any of the criteria for a finding of general jurisdiction. There has been no showing that the Institute maintained "continuous", "substantial" or "systematic" contacts with Louisiana. The Institute has only one member in Louisiana out of a total of forty members; only 2.2% of the dues collected by the Institute are collected from the Louisiana member; no money is earned from the sale of any Institute publications in Louisiana and no repeated meetings or educational symposia are held in Louisiana.
SPECIFIC JURISDICTION:
Likewise, there is no "significant relationship" between the Institute's very limited contacts in Louisiana and the plaintiff's cause of action to support a finding of specific jurisdiction.
The Institute has not purposely directed any activity toward residents of Louisiana nor does it interact with retail vinegar consumers in Louisiana. There is no evidence that the Institute directed or mandated that its Louisiana member or any other member distribute the MSDS to Baumer Foods, Inc. or any other food manufacturer in Louisiana. The record is clear that the MSDS given to Baumer did not come from the Louisiana member. No activities were conducted in Louisiana related to the development of the MSDS. No evidence was presented that the Institute exerted control over its members to use the proposed MSDS. The Institute conducted no lobbying, purchased no advertising *1265 and conducted no business related to the proposed MSDS. The Institute did not participate or have any input in or control over the manufacture, distribution or sale of mustard, vinegar or any other food product in Louisiana. In addition, no evidence has been presented that there existed any contractual relationship between the Institute and any business enterprise in Louisiana.
Plaintiffs argue that the Institute was required by federal regulations to prepare and disseminate the MSDS to ultimate users such as Baumer. This is not supported by the record. The Institute is a trade association whose members are vinegar manufacturers. The manufacturers, not the Institute, are required by federal law to provide Material Safety Data. The mere fact that information prepared by the Institute found its way to a Louisiana user, standing alone, cannot satisfy minimum due process standards. See, Asahi Metal Industry Co. Ltd. v. Super. Ct. of Cal., Solano County, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), where the court held that the placement of a product into the stream of commerce, without more, is not an act directed to the forum State sufficient to satisfy due process.
While we recognize Louisiana's interest in the instant dispute, its' shared interest in fostering fundamental substantive social policies and the judicial system's interest in obtaining an efficient resolution of the controversy, we are not prepared to subject the Institute to in personam jurisdiction based on the tenuous and fortuitous contacts which exist in this case. The relationship between the Institute's preparation of the proposed MSDS and plaintiffs' injuries is so tenuous that the Institute could not have reasonably anticipated being "haled" into Court. The Institute prepared the alleged defective document for use by its members. Simply because the document found its way to Baumer Foods does not constitute sufficient minimal contacts to subject the Institute to Louisiana's jurisdiction. To find otherwise would offend both the Louisiana Long Arm Statute and procedural due process.
For the foregoing reasons, the judgment of the trial court is reversed. The Institute's Declinatory Exception of Personal Jurisdiction is maintained, dismissing plaintiffs' cause of action against it. All costs of this appeal to be paid by appellees.
REVERSED AND RENDERED.
NOTES
[1] Plaintiffs filed a motion to dismiss this appeal because it is taken from an interlocutory decree. However, Code of Civil Procedure Article 2083 permits an appeal from an interlocutory judgment which may cause irreparable injury. Since this case involves a question of jurisdiction, we permit the appeal and deny plaintiffs motion to dismiss.
[2] Previously this court affirmed the dismissal of other defendants on motions for summary judgment. Fricke v. Owens-Corning Fiberglas Corporation, et al., 618 So.2d 473 (La.App. 4th Cir. 1993).
[3] Attached to plaintiffs' brief are excerpts from Donald McIntyre's deposition, various policy guidelines of the Food and Drug Administration, and Occupational Health Guideline for Acetic Acid. However, none of those documents are part of the designated record filed in connection with this appeal. In addition, less than a week before oral argument, plaintiffs sought to file an additional brief which contained other material not part of the appeal record. This Court is bound to decide the matter on the record before us, and therefore denied the plaintiffs' attempt to supplement the record at this stage of the proceedings. However, in all candor, this is lengthy and complicated litigation. Much of the material plaintiffs refer to has been to this court previously involving other defendants. We are familiar with it and, even if considered, would not affect our decision in this matter.
[4] See also, Bartholomew v. Virginia Chiropractors Association, 612 F.2d 812 (4th Cir. 1979), cert den., 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980); Golf City, Inc. v. Wilson Sporting Goods Co., 555 F.2d 426 (5th Cir.1977); Academy of Ambulatory Foot Surgery v. American Podiatry Association, 516 F.Supp. 378 (S.D.N.Y. 1981); Health Care Equalization Committee v. Iowa Medical Society, 501 F.Supp. 970 (S.D.Iowa 1980), aff'd, 851 F.2d 1020 (8th Cir.1988); Friends of Animals, Inc. v. American Veterinary Medical Association, 310 F.Supp. 620 (S.D.N.Y. 1970).