661 So.2d 169 (1995)
Rufus BOATWRIGHT, et al.
v.
METROPOLITAN LIFE INSURANCE COMPANY, et al.
Jack S. AULDS, et al.
v.
METROPOLITAN LIFE INSURANCE COMPANY, et al.
Joseph DOMINICK, Jr., et al.
v.
METROPOLITAN LIFE INSURANCE COMPANY, et al.
Nos. 95-C-1822, 95-C-1823 and 95-C-1913.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1995.
Rehearing Denied October 25, 1995.
*170 Jerald L. Album, Charles V. Giordano, Abbott, Simses, Album, Knister & Baynham, New Orleans, for Relator Rapid American Corp.
Frank J. Swarr, F. Gerald Maples, PA, New Orleans, for Respondents Jack S. Aulds, Joseph Dominick, Jr., et al.
Before BARRY, LOBRANO and PLOTKIN, JJ.
LOBRANO, Judge.
We granted certiorari in these consolidated matters to consider relator's exception to personal jurisdiction. In three cases, the plaintiff seeks damages from various defendants, including Rapid American Corporation (relator), as a result of exposure to asbestos. Liability in each case is premised on exposure to asbestos products manufactured by Philip Carey Manufacturing Corporation (Old Carey). Relator is a Delaware corporation with its principal place of business in New York. In all three suits, relator's exception was denied.
In support of its exception, relator outlined its corporate history and that of Old Carey through the affidavit of Bernard Blaney, relator's former treasurer. Old Carey was an Ohio corporation formed in 1888 that manufactured asbestos products. In 1966 Glen Alden Company, a Delaware Corporation that did not manufacture asbestos, formed P.C. Company, Inc. as a vehicle to carry on the business of Old Carey as soon as Glen Alden's acquisition of Old Carey was completed. On June 1, 1967, Old Carey merged into Glen Alden, and Glen Alden assumed all of Old Carey's liabilities through the merger. Glen Alden then immediately transferred Old Carey's business to P.C. Company, a subsidiary which was later renamed Philip Carey Corporation (New Carey). New Carey then assumed Old Carey's liabilities to which Glen Alden had become subject as a result of the merger and agreed to hold Glen Alden harmless and to indemnify it for such liabilities.
In April 1970, New Carey merged with Briggs Manufacturing Company; the successor corporation was named Panacon Corporation. Glen Alden owned the majority of Panacon's publicly traded shares. In April 1972, Glen Alden sold its controlling interest in Panacon to Celotex Corporation; Panacon was a subsidiary of Celotex until it was merged into Celotex in June of 1972. As part of the merger, Celotex acquired all of Panacon's liabilities.
In October/November 1972, Rapid American Corporation of Ohio (Rapid Ohio) merged with Glen Alden. The successor corporation was named Rapid American Corporation, and it assumed all debts and liabilities of Glen Alden. In January 1981, Rapid American merged with Kenton Corporation and R-K Holding Corporation to become the present day relator. Like the other merger agreements, this one provided for the assumption of liability of the predecessor corporations.
Blaney also stated in his affidavit that relator or its predecessors had never engaged in the manufacture of asbestos and had never done business in Louisiana. Relator submitted a certificate from the Secretary of State showing that it had never qualified to do business in Louisiana.

DISCUSSION:
Relator complains that its exception should have been granted because there is no basis for Louisiana to exercise in personam jurisdiction under the Long-Arm Statute (La.R.S. *171 13:3201 et seq.). Relator argues that it never purposefully availed itself of the privilege of conducting business in this state, that the exercise of jurisdiction would not be fair or reasonable, that Old Carey's previous contacts with Louisiana cannot be imputed to it, and that it could not have reasonably foreseen being haled into a Louisiana court to answer for Old Carey's alleged liability.
The opposition argues that because relator is the successor-in-interest to Old Carey, it is amenable to suit in Louisiana. They argue that Old Carey's contacts should be imputed to relator and that due process would not be violated by subjecting relator to the in personam jurisdiction of Louisiana. They point to cases from Michigan, Missouri, and West Virginia holding that those states had jurisdiction over relator in virtually identical fact situations.
La.R.S. 13:3201(B) provides:
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
Subsection B was added in 1987 to ensure that jurisdiction under the Long Arm Statute extended to the limits allowed by due process. Official Comments, Acts 1987, No. 428. In Fox v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 576 So.2d 978, 983 (La. 1991) our Supreme Court provided the following guidance with respect to in personam jurisdiction over a non resident.
"Since the 1987 amendment to LSA-R.S. 13:3201, the sole inquiry in Louisiana into jurisdiction over a nonresident is whether the assertion of jurisdiction complies with constitutional due process. (citation omitted) The limits of the Louisiana long arm statute and the limits of constitutional due process are coextensive and therefore, if the assertion of jurisdiction meets the constitutional requirements of due process the assertion of jurisdiction is authorized under the long arm statute."
Due process requires that in order to subject a nonresident defendant to personal jurisdiction, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); de Reyes v. Marine Mgt. and Consulting, 586 So.2d 103 (La.1991).
The minimum contacts between the nonresident defendant and the state must be based on some act by the defendant through which he purposefully avails himself of the privilege of conducting activities within the state and thereby invokes the benefits and protections of the state's law. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This requirement ensures that the defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person. de Reyes, 586 So.2d at 106. If the defendant deliberately engages in significant activities within a state or creates continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there; because his activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require the defendant to submit to the burdens of litigation in that forum. Id. The burden of proving minimum contacts lies with the party claiming jurisdiction to be proper. Once minimum contacts are established, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice". Burger King Corp., 471 U.S. at 476, 105 S.Ct. at 2184.
Minimum requirements inherent in the concept of fair play and substantial justice may defeat the inference of reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. Id. The relationship between the nonresident and the state must be such that it would be reasonable to require the nonresident to defend the suit in that state. International Shoe, supra. The burden on the nonresident defendant is a primary concern. In appropriate *172 cases, this burden will be considered in light of the other relevant factors such as the state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief when that interest is not adequately protected by his power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the states in furthering fundamental substantive social policies. World-Wide Volkswagen v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); de Reyes, supra.
Thus the issues are whether Old Carey's contacts with this state should be attributed to relator to find whether minimum contacts exist and whether the exercise of jurisdiction would violate relator's right to due process.[1]
Both relator and plaintiffs cite personal jurisdiction cases involving relator in other states. Relator relies on Weigart v. Rapid American Corp., unpub. (X-XX-XXXX) (E.D.Tenn., 8/23/94), in which the court held that there was no personal jurisdiction over relator in Tennessee based upon Old Carey's activities in that state. The court stated that because liability as a successor and in personam jurisdiction were separate issues, resting Glen Alden's assumption of Old Carey's liabilities on relator would not be dispositive of the jurisdiction issue. The court noted that the merger of Old Carey and Glen Alden was not a straightforward one but was instead a "pass-through" merger in which the business of Old Carey was continued by Glen Alden's subsidiary, P.C. Company. The court further stated that the series of transactions that occurred after the merger caused Glen Alden to cease having even the relationship of a parent corporation to any business in the asbestos industry before its merger with relator. The court stated that the history of mergers and acquisitions showed there was no risk that a finding in relator's favor would foster corporate attempts at immunization from liability by name changes or other formalistic changes. The court further stated that relator could not have reasonably foreseen that it could be haled into a Tennessee court to answer for the liabilities of a long nonexistent corporation whose business had been taken over by a subsidiary that relator never acquired. The court called the relationship between the underlying claim and relator "tenuous." The court concluded that the exercise of in personam jurisdiction would violate due process.
Plaintiffs rely on a case from Michigan, Jeffrey v. Rapid American Corp., 448 Mich. 178, 529 N.W.2d 644 (Nos. 96953-97009) (3/15/95), in which the court held there was personal jurisdiction over relator by way of Old Carey's contacts with Michigan. The court noted that there was a current national trend equating personal jurisdiction with a successor corporation's liability and that the rationale supporting this trend was that corporations should be prevented from using organizational changes to avoid jurisdiction in states where they have previously done business. The court further stated that even though liability was not the equivalent of jurisdiction, the similarity of issues underlying jurisdiction and liability inescapably led to the conclusion that theories of liability were useful in determining whether the jurisdictional contacts of a predecessor may be imputed to a successor.[2] The court concluded that the actions of a constituent corporation may be attributed to the surviving corporation following a merger in order to determine the surviving corporations' amenability to personal jurisdiction for liabilities incurred by the constituent corporation. Therefore, relator purposefully availed itself of the privilege of conducting activities in Michigan through its assumption of Old Carey's *173 liabilities. The court, after engaging in a due process analysis, concluded that the exercise of jurisdiction would be reasonable because relator should have anticipated being brought into Michigan's courts because of its assumption of Old Carey's assets and liabilities through Glen Alden. The court noted that at the time of Glen Alden's merger with Old Carey, Glen Alden was a subsidiary of relator. The court found that there would be no unconstitutional burden on relator by requiring it to litigate in Michigan; that the most convenient forum for the plaintiff would be Michigan; that in the interstate interest the most efficient resolution of the case was served by trying the case in Michigan; and, that Michigan had a strong interest in trying the case.
In Cole v. Caterpillar Machinery Corp., 562 F.Supp. 179 (M.D.La.1983), the court held that there was jurisdiction under the Louisiana Long-Arm Statute over a successor corporation where the successor assumed the assets and liabilities of the predecessor. The court stated that since the successor could have sued in this state to collect money owed to the predecessor, it would be fair for the successor to expect to answer for its predecessor's liability in this state.
We find that the reasoning of the Tennessee Court in Weigart, supra, is the more persuasive view. Relator could not have foreseen being sued in this state to answer for liabilities of a long nonexistent corporation, the business of which had been taken over by a subsidiary that relator never owned. Additionally, unlike the successor corporation in Cole, relator could not have sued in this state to collect money owed to Old Carey since Old Carey, as well its successor New Carey and Panacon, were sold before Glen Alden merged with Rapid Ohio, relator's predecessor corporation. More important, however, is the fact that relator has had no contacts in Louisiana from which it availed itself of the privilege of doing business in this state.
It would be unreasonable to conclude that relator could have expected to be haled into Louisiana's courts because of the series of mergers and acquisitions outlined above. Although we do not intend to convey a hard and fast rule that a successor corporation can never be subject to Louisiana's Long Arm Statute because of the contacts of its predecessor, under the facts of the instant case, to do so would violate any notion of fair play and substantial justice.
Accordingly, the judgments of the trial courts are reversed and, in each case, relator's exception to the jurisdiction is granted.
REVERSED AND RENDERED.
NOTES
[1] Although Louisiana courts have analyzed jurisdictional problems in the context of whether general jurisdiction or specific jurisdiction is applicable, see, e.g. Fricke v. Owens Corning Fiber-glass Corp., 94-0114 (La.App. 4th Cir. 12/15/94), 647 So.2d 1260, it would be inappropriate to analyze the instant case in that context. Even though its predecessor had contacts with Louisiana, relator has never done business in this state. Absent its predecessor's contacts, there could be no general or specific jurisdiction over relator in the instant case.
[2] In Tretter v. Rapid American Corp., 514 F.Supp. 1344 (E.D.Mo.1981), the court held that relator could not escape liability for Old Carey's liabilities despite the transfer of liability to New Carey.