684 So.2d 529 (1996)
Gaylon D. SIMMONS
v.
J.C. TEMPLETON, et al.
Gaylon D. SIMMONS and Gloria Annette Turner Simmons
v.
J.C. TEMPLETON, et al.
Nos. 96-C-0592, 96-CA-0704.
Court of Appeal of Louisiana, Fourth Circuit.
November 27, 1996.
Writ Denied February 7, 1997.
*530 Ewell E. Eagan, Jr., Alan C. Wolf, C. Peck Hayne, Jr., Gordon, Arata, McCollam & Duplantis, L.L.P., New Orleans, for Plaintiffs/Relators/Appellants.
Donald C. Templin, Leila A. D'Aquin, Haynes and Boone, L.L.P., Dallas, TX, and Dena L. Olivier, Liskow & Lewis, New Orleans, for Defendant/Respondent/Appellee.
Daniel Lund, A. Carter Mills, IV, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., New Orleans, for Defendants/Respondents/Appellees.
Before BYRNES, LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
Plaintiffs Mr. and Mrs. Gaylon D. Simmons (hereinafter referred to as "the Simmonses") appeal a trial court judgment granting an exception to personal jurisdiction in favor of defendants Joe H. Foy, Harry V. Carson, Robert Ted Enloe III, W.A. Griffin, Thomas L. Kister, Leonard Leon, and Edward T. Cotham, seven of the nine directors of TGX Corporation (hereinafter referred to collectively as "the nonresident directors"), as well as an exception to personal jurisdiction in favor of the law firm of Bracewell & Patterson.
Consolidated with this appeal is a supervisory writ application by which the Simmonses contest a trial court judgment granting an exception to venue in favor of the accounting firm of defendant BDO Seidman (hereinafter referred to as "Seidman") and transferring the case against Seidman to East Baton Rouge Parish.
We reverse both the judgment granting the exception to personal jurisdiction in favor of the nonresident directors and the judgment granting the exception of improper venue and transferring the case against Seidman to East Baton Rouge Parish, and affirm the judgment granting the exception to personal jurisdiction in favor of Bracewell & Patterson.
I. Facts
The instant suit arises out of the November 14, 1986 sale by the Simmonses of all of the stock of their family-owned corporation, Louisiana Energy & Development Co. (hereinafter referred to as "LEDCO"), to TGX Corporation. The Simmonses claim that they were fraudulently induced to sell the stock by misrepresentations made during the negotiation of the sale by TGX's president and chairman J.C. Templeton, as well as misrepresentations contained in SEC filings made by TGX. The Simmonses sold their stock in return for preferred stock in TGX and $5 million in future cash payments.
The Simmonses filed suit, claiming fraud, misrepresentation, conspiracy, and self-dealing arising out of the purchase and sale of the stock. The bulk of their petition details the actions of Templeton, who remains a defendant in the law suit. The Simmonses claim that Templeton misrepresented the financial *531 condition of TGX and failed to disclose both the fact that the TGX stock they received was "virtually worthless" and the fact that TGX was unable to pay the agreedupon price. The Simmonses allege that they were promised and that they expected to receive more than $21 million for their LECO stock. Instead, TGX filed bankruptcy and the Simmonses received only $13 million. The Simmonses cite two primary "material misstatements and omissions": (1) TGX's involvement in "titanic litigation" stemming from its contract with the National Fuel Gas Distribution Corporation (hereinafter referred to as "NFG litigation"), and (2) the successive developments in that litigation which were adverse to the financial interests of TGX. The Simmonses also claim that their damages were caused by an accelerated drilling program.
II. Exception to personal jurisdiction
In their petition, the Simmonses made the following allegations against the defendants who are the subject of the exception of lack of personal jurisdiction in the instant case:
TGX and Temple, with the aid and assistance of the other defendants, represented or caused to be represented that there was no litigation threatened or pending relating to or affecting TGX or any of its assets which would have a material adverse effect on TGX ...
Temple and TGX were substantially assisted in the fraud they perpetuated upon Simmons by the actions of defendant Joe H. Foy ("Foy"), a partner in the law firm of Bracewell & Patterson, a director of TGX and legal counsel of TGX. Foy supervised the NFG litigation and, despite the continuing rejection of TGX's arguments by the courts at every stage of the proceedings, Foy made statements to TGX's independent auditors calculated to prevent the disclosure of the litigation in filings with the SEC and negotiations with Simmons. Foy's law firm, Bracewell & Patterson, also provided substantial assistance in the nondisclosure of the NFG litigation. Foy was also aware of and assisted in Templeton's and TGX's misrepresentations of material fact concerning the accelerated drilling program.
The fraudulent scheme was also aided and assisted by [the nonresident directors] through their role in the supervision and direction of TGX's affairs.
. . . . .
Finally, since the November 14, 1986 closing of the sale of LEDCO, Templeton, Foy and the other directors have consistently engaged in a pattern of self-dealing, insider transactions and payments of constructive dividends to TGX common shareholders designed to interfere with Simmons' rights under the contract between Simmons and TGX. In so doing, Templeton, Foy and the other directors have breached their fiduciary duties to Simmons.
A. Standard for deciding exception to personal jurisdiction
Whether a Louisiana court can exercise jurisdiction over a defendant who is a nonresident of Louisiana is controlled by the provisions of LSA-R.S. 13:3201, the Louisiana Long-Arm Statute. Louisiana's Long-Arm Statute is subdivided into two parts: subsection (A), which lists eight specific activities which when undertaken by a nonresident automatically subject that nonresident to the jurisdiction of Louisiana courts; and subsection (B) which provides as follows:
In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
(Emphasis added.)
The standard for deciding an exception to personal jurisdiction under LSA-R.S. 13:3201(B) was set forth by this court in Boatwright v. Metropolitan Life Insurance Co., 95-1822, 95-1823, 95-1913 (La.App. 4th Cir. 9/28/95), 661 So.2d 169, as follows:
Subsection B was added in 1987 to ensure that jurisdiction under the Long Arm Statute extended to the limits allowed by due process. Official Comments, Acts 1987, No. 428. In Fox v. Board of Supervisors *532 of Louisiana State University and Agricultural and Mechanical College, 576 So.2d 978, 983 (La.1991) our Supreme Court provided the following guidance with respect to in personam jurisdiction over a non resident.
"Since the 1987 amendment to LSA-R.S. 13:3201, the sole inquiry in Louisiana into jurisdiction over a nonresident is whether the assertion of jurisdiction complies with constitutional due process. (citation omitted) The limits of the Louisiana long arm statute and the limits of constitutional due process are coextensive and therefore, if the assertion of jurisdiction meets the constitutional requirements of due process the assertion of jurisdiction is authorized under the long arm statute."
Due process requires that in order to subject a nonresident defendant to personal jurisdiction, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); de Reyes v. Marine Mgt. and Consulting, 586 So.2d 103 (La.1991).
The minimum contacts between the nonresident defendant and the state must be based on some act by the defendant through which he purposefully avails himself of the privilege of conducting activities within the state and thereby invokes the benefits and protections of the state's law. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This requirement ensures that the defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person. de Reyes, 586 So.2d at 106. If the defendant deliberately engages in significant activities within a state or creates continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there; because his activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require the defendant to submit to the burdens of litigation in that forum. Id. The burden of proving minimum contacts lies with the party claiming jurisdiction to be proper. Once minimum contacts are established, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice". Burger King Corp., 471 U.S. at 476, 105 S.Ct. at 2184.
Minimum requirements inherent in the concept of fair play and substantial justice may defeat the inference of reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. Id. The relationship between the nonresident and the state must be such that it would be reasonable to require the nonresident to defend the suit in that state. International Shoe, supra. The burden on the nonresident defendant is a primary concern. In appropriate cases, this burden will be considered in light of the other relevant factors such as the state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief when that interest is not adequately protected by his power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the states in furthering fundamental substantive social policies. World-Wide Volkswagen v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); de Reyes, supra.
Id. at 171.
B. Jurisdiction over the nonresident directors
The Simmonses cite the following "facts," which they claim support personal jurisdiction of a Louisiana court over the nonresident directors:
1. The stock sales transaction involved property located in Louisiana and occurred between Louisiana residents and a Louisiana-based corporation.
2. TGX is a corporation with its principal place of business, as well as its executive *533 and financial headquarters in Louisiana.
3. TGX filed for bankruptcy in Louisiana.
4. The nonresident directors received substantial payments between $16,200 and $18,000 annually for their services to TGX, a Louisiana-based company.
5. The sales agreement was executed in New Orleans, and provides for the application of Louisiana law.
6. The initial cash payment was made in New Orleans and substantial future payments were to be made in Louisiana.
7. The initial meeting of the negotiations between the Simmonses and Templeton occurred in New Orleans; all negotiations occurred in Louisiana.
8. The directors approved the sales agreement at a board meeting in Louisiana.
9. Foy came to Louisiana several times in connection with TGX's bankruptcy litigation.
The nonresident directors claim that none of the facts set forth above can provide the basis of a finding that the nonresident directors had minimum contacts because most of them do not concern the directors' actions as individuals, but simply the corporation's. The basic arguments made by the defendants for lack of personal jurisdiction include the following:
1. TGX is a Delaware corporation.
2. The nonresident directors first learned of the proposed purchase of the LEDCO stock at a regular meeting of the Board of Directors at TGX's offices in Houston.
3. Although the special meeting approving the sale was held in Shreveport, Louisiana, the non-resident directors participated only by telephone.
4. One of the reasons TGX was interested in the LEDCO stock was because two of LEDCO's subsidiaries were located in Houston.
5. The deposition of plaintiff Gaylon Simmons shows that the Simmonses never had personal contact with any of the nonresident defendants.
Moreover, the nonresident directors filed affidavits showing the following things:
1. None of the nonresident directors has lived in louisiana since 1968; only two ever lived in Louisiana.
2. None of the nonresident directors has owned property in Louisiana since 1968; only one ever owed property in Louisiana.
3. None of the out-of-state directors has attended more than two TGX meetings in Louisiana.
In deciding the exception of lack of personal jurisdiction, the trial court apparently relied on the Louisiana First Circuit Court of Appeal's decision in Briley Marine Service, Inc. v. Toups, 551 So.2d 755 (La.App. 1st Cir.), writ denied, 553 So.2d 476 (La. 1989). In Briley, the First Circuit held that a Louisiana court could not exercise personal jurisdiction over directors of a Delaware corporation with principal offices in Houma, Louisiana, which contracted with Louisiana residents to purchase offshore vessels, in a suit seeking damages arising out of the contract. Id. The court cited many of the factors urged by the defendants in the instant case and found that Louisiana's jurisdiction over the person did not reach to those directors, who were not personally involved in the transaction giving rise to the litigation, because of lack of sufficient minimum contacts so as not to offend traditional notions of fair play and substantial justice.
However, we decline to follow the Briley decision for two reasons. First, while we agree with Briley's analysis of the law with respect to jurisdiction over foreign directors, we are not persuaded that its facts should not have warranted a different result. Irrespective, we are not bound by its factual conclusion. Second, we find sufficient minimum contacts under the facts of the instant case to support the exercise of personal jurisdiction under applicable jurisprudence from this court.
1. Jurisdiction over nonresident directors of corporation with principal place of business in Louisiana
First, we disagree with the conclusion reached by the court in Briley that the out-of-state *534 directors of a foreign corporation with its principal place of business in Louisiana[1] which entered a contract with a Louisiana resident have insufficient minimum contacts to support personal jurisdiction in a Louisiana court. Louisiana's Long-Arm Statute is designed by legislative decree to extend to the limits of constitutional due process; thus, it should be read to accomplish those ends. A review of the Long-Arm Statutes promulgated by all the states in the United States reveals that at least nine statesIllinois, Indiana, Kansas, Maine, Michigan, Montana, New Jersey, North Dakota, and South Dakotainclude provisions automatically providing for jurisdiction over directors of corporations having their principal places of business within the state, even if the corporation is a foreign corporation. These "automatic" provisions indicate that the exercise of personal jurisdiction over directors of such corporations comports with fair play and substantial justice and thus does not violate constitutional standards.
Although Louisiana's Long-Arm Statute does not include a similar "automatic" personal jurisdictional provision concerning nonresident directors of a corporation with its principal place of business in Louisiana, the existence of such provisions in other states is evidence that Louisiana may exercise personal jurisdiction under LSA-R.S. 13:3201(B), which expressly allows Louisiana courts to exercise personal jurisdiction over a nonresident "on any basis consistent with the constitution of this state and of the Constitution of the United States." The fact that other states have provisions automatically allowing the state's courts to exercise personal jurisdiction over nonresident directors of foreign corporations having their principal places of business in the state indicates that the exercise of such jurisdiction is consistent with the Constitution of the United States. Moreover, nothing in Louisiana's constitution makes the exercise of such personal jurisdiction inconsistent with that document.
2. Jurisdiction under facts and jurisprudence
Second, a review of the Louisiana Fourth Circuit Court of Appeal's decisions on this subject indicates that the exercise of personal jurisdiction over the nonresident directors of TGX is appropriate in this case. Under the Boatwright decision quoted above, the initial inquiry to be made is whether the nonresident defendant has engaged in activities through which he purposefully availed himself of the privilege of conducting activities within Louisiana, especially by engaging in significant activities within the state or creating a continuing obligation between himself and residents of the forum. 661 So.2d at 171. The directors in the instant case have purposely availed themselves of the privilege of conducting business in Louisiana by receiving salaries from a corporation with its principal place of business in Louisiana and by attending the special board meeting approving the purchase of the LEDCO stock from the Simmonses, which was held in Louisiana, albeit that their attendance was by telephone. Moreover, by approving that purchase, the directors approved a transaction whereby Louisiana residents were to become owners of preferred stock in the corporation which they directed; the corporation which they directed also became indebted to Louisiana residents for $5 million in future cash payments. The transactions created fiduciary duties on the part of the nonresident directors flowing to Louisiana residents. Thus, the directors engaged in activities which created a continuing obligation between themselves and the Louisiana residents. In short, the exercise of personal jurisdiction over the nonresident directors under the facts of the instant case is not based on "random, fortuitous, or attenuated conduct," or "the unilateral activity of another *535 party or third person," but on the conduct of the nonresident directors themselves.
The second portion of the inquiry, according to Boatwright, is whether minimum requirements inherent in the concept of fair play and substantial justice have been met. 661 So.2d at 171. A primary concern of this portion of the inquiry is the burden on the nonresident defendant of being required to defend a suit in this state. Other relevant factors include the following:
the state's interest in adjudicating the dispute; the plaintiffs interest in obtaining convenient and effective relief when that interest is not adequately protected by his power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the states in furthering fundamental substantive social policies.
All of the above factors favor the exercise of personal jurisdiction in the instant case. First, the record contains no evidence that requiring the nonresident directors to defend a suit in Louisiana in this case would place an undue burden on the defendants; in fact, the defendants fail to address the issue of whether they would be burdened by having to defend an action in a Louisiana court. We note, however, that the defendants all attend TGX board meetings in Texas, Louisiana's sister state.
Further, Louisiana has a definite interest in adjudicating this dispute because it involves a Louisiana transaction which adversely affected Louisiana residents. The plaintiffs also have an interest in obtaining convenient and effective relief from the alleged fraud of the defendants which would not be adequately protected if they were not allowed to choose the forum especially given the fact that the negotiations and the transaction occurred in Louisiana. Moreover, the interstate judicial system has an interest in obtaining the efficient resolution of controversies which is served by allowing a Louisiana court to solve this particular controversy involving the sale and purchase of stock between a Louisiana corporation and a foreign corporation with its principal place of business in Louisiana, especially because the contract provides for the application of Louisiana law. Finally, the states have a shared interest in furthering a fundamental substantive social policy requiring nonresident directors of a corporation with its principal place of business in the forum state to answer for their improper conduct in relation to that corporation's business in that state.
Allowing personal jurisdiction over the nonresident directors in the instant case is also consistent with this court's most recent opinion involving personal jurisdiction over a nonresident, Escoto v. U.S. Lending Corp., 95-2692 (La.App. 4th Cir. 5/22/96), 675 So.2d 741, writ denied, 96-1634 (La.9/27/96), 679 So.2d 1343. In Escoto, this court found that Louisiana courts may exercise personal jurisdiction over a nonresident defendant who solicited sales of debentures in Louisiana through registered broker/dealers, despite the fact the nonresident had essentially no personal contacts with the state. The decision, which rejected the defendant's assertion of the "fiduciary shield doctrine,"[2] was based in large part on a finding that the defendant could be personally liable for his actions under Louisiana law and the fact that the defendant purposely availed himself of the privilege of conducting business within the State of Louisiana both because his company sought Louisiana residents as prospective purchasers of its debentures and because the defendant availed himself of the privilege of soliciting Louisiana residents for the benefit of his corporate employer. The court stated as follows:
[The nonresident defendant] had or should have had sufficient knowledge of Louisiana's security laws to provide him fair warning that he might have personal exposure in the marketing of his corporate employer's securities in this state. Under these particular circumstances we find that notions of fair play and justice are not offended by requiring [the nonresident defendant's] presence in a Louisiana court. *536 Louisiana has a strong interest in protecting its residents who purchase securities marketed in this state. Despite the fact that [the nonresident defendant's] actions were done in a corporate capacity, Louisiana, as a means of protecting its citizens, does not permit an executive's wrongdoing in the marketing of securities to escape personal responsibility via a corporate shield.
Id., slip op. at 11, 675 So.2d at 746.
A similar analysis applies to the defendants in this instant suit. Although we acknowledge some factual differences exist between Escoto and the instant case, we find that those differences are not distinctions which demand a different result. Certainly, given the fact that the nonresident defendants in the instant case are directors of a corporation with its principal place of business in Louisiana, they had or should have had sufficient knowledge of Louisiana law to know that they could be held personally liable for aiding and abetting fraud in the corporation's dealings with Louisiana residents. Moreover, Louisiana has just as strong an interest in protecting its citizens from a fraudulent scheme inducing them to sell all their interest in their family-owned Louisiana business in exchange for worthless stock in a foreign corporation as it has in protecting its residents who purchase securities marketed in this state. Thus, we find that notions of fair play and substantial justice are not offended by requiring the nonresident directors in this case to defend this suit in a Louisiana court.
Finally, this decision is consistent with decisions from other jurisdictions allowing a state's courts to exercise personal jurisdiction over nonresident directors of foreign corporations having principal places of business in the state, even in the absence of a specific provision in the state's Long-Arm Statute. See, e.g., International Harvester Co. v. Mann, 460 So.2d 580 (Fla.App. 1st Dist.1984); Martin v. Ju-Li Corp., 332 N.W.2d 871 (Iowa 1983); Kopperud v. Agers, 312 N.W.2d 443 (Minn.1981).
C. Jurisdiction over Bracewell & Patterson
The Simmonses' allegations against Bracewell & Patterson center around their claim that the law firm, through its partner Foy, did work for TGX in connection with the LEDCO transaction and sent several written audit responses addressing the NFG litigation to TGX. The Simmonses argue that a law firm which provides ongoing representation of a Louisiana client is subject to personal jurisdiction because of a presumption that the law firm has received substantial payments for those services. However, the Simmonses cite no authority for those arguments.
Bracewell & Patterson argues that personal jurisdiction is improper because of the lack of minimum contacts. Moreover, Bracewell and Patterson claims, the firm's work concerning the NFG was completely unrelated to TGX's purchase of the Simmonses stock in LEDCO, and the letters concerning the purchase of the stock dealt with the narrow issue of whether the purchase might be affected by the Public Utility Holding Company Act.
We affirm the trial court judgment granting the exception to personal jurisdiction in favor of Bracewell & Patterson. Unlike the nonresident directors, Bracewell & Patterson had no connection to the transaction giving rise to the instant suit. Moreover, the Simmonses' petition contains no allegations which show any minimum contacts between Bracewell & Patterson and Louisiana. Under the circumstances, personal jurisdiction over Bracewell & Patterson would not comport with constitutional concerns of fair play and substantial justice because it would be based on "random, fortuitous, or attenuated conduct," or "the unilateral activity of another party or third person."
III. Exception to venue
Consolidated with the instant appeal is a supervisory writ application contesting a trial court decision granting an exception to venue filed by defendant Seidman, which is an accounting firm. The Simmonses' petition *537 makes the following allegations against Seidman:
[V]arious material misstatements and omissions in furtherance of the fraudulent scheme were made or caused to be made by BDO Seidman, TGX's accounting firm, in TGX's public filings with the SEC and TGX's financial statements. BDO Seidman breached its duty to the investing public and to Simmons by representing to the investing public that financial statements containing such material misrepresentations fairly and accurately represented the actual financial condition of TGX.
The Simmonses claim that venue is proper in Orleans Parish under the venue exception established by La.C.C.P. art. 74 because they sustained damages in Orleans Parish, where they reside, from Seidman's tortious conduct committed in another parish. On the other hand, Seidman claims that venue is not proper in Orleans Parish for the following reasons: (1) Seidman is a New York corporation which performed its work on behalf of TGX in Dallas, Texas, and Shreveport, Louisiana; (2) Seidman had no contact with New Orleans, (3) Seidman's reports were not prepared in connection with the transaction which is the subject of this litigation, and (4) Seidman's statements were not reviewed in Orleans Parish or for the Simmonses, but instead were distributed to TGX in Shreveport. The fact that, unknown to Seidman, Seidman's report was used in a transaction in Orleans Parish is insufficient to confer venue in Orleans Parish, Seidman claims. The trial court agreed with Seidman's arguments and granted the exception of improper venue, transferring the case against Seidman to East Baton Rouge Parish, which is a parish of proper venue under the general rule of venue established by La.C.C.P. art. 42(6), which allows venue in the in a suit against a nonresident who has appointed an agent for service of process in the parish of the designated post office address of the agent for service of process.
However, the Simmonses claim that their action against Seidman is proper under the exception to the general venue provisions established by La.C.C.P. art. 74, which provides, in pertinent part, as follows:
An action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained.
The Simmonses claim that they sustained damages from Seidman's wrongful conduct when they entered the purchase agreement in Orleans Parish. Thus, the question this court must determine is whether Orleans Parish is the "parish where the damages were sustained" for purposes of La.C.C.P. art. 74 venue.
Generally, a defendant has the right to be sued before his own judge. Coursey v. White, 184 So.2d 625, 627 (La.App. 4th Cir. 1966). This rule is recognized by the general venue provisions established by La.C.C.P. art. 42. Thus, the exceptions to the general venue rules established by La.C.C.P. arts. 71 through 77 are considered to be in derogation of a common right. Hawthorne Oil & Gas Corp. v. Continental Oil Co., 377 So.2d 285, 287 (La.1979). The exceptions therefore must be strictly construed, meaning that the party claiming the benefit of one of the exceptions must bring himself clearly within that exception. Id.
A review of the Louisiana jurisprudence concerning venue under La.C.C.P. art. 74 in cases based on actions taken by a defendant in one parish which cause damages to a plaintiff which either occur or continue in another parish reveals two general rules. These rules were originally recognized by the Louisiana First Circuit Court of Appeal in Belser v. St. Paul Fire & Marine Insurance Co., 509 So.2d 12 (La.App. 1st Cir.1987), an opinion which contains an extensive discussion of previous decisions in light of the history and purpose of La.C.C.P. art. 74. After reviewing a line of cases involving personal injury causes of action, the court stated the following rule:
The common thread that runs through the ... line of cases is that, if any damage is caused to the plaintiff in the parish where the wrongful conduct occurred, that parish, and no other, is "the parish *538 where the damages were sustained" for purposes of Article 74.
Id at 20. The above rule was adopted by the Louisiana Supreme Court in a legal malpractice case in Chambers v. LeBlanc, 598 So.2d 337 (La.1992).
However, the Belser court also reviewed a second line of cases involving products liability and stated the following rule:
The common thread running through the... line of cases is that where no damage is caused to the plaintiff in the parish where the wrongful conduct occurred, a parish where the damages were sustained is a proper venue.
509 So.2d at 20.
The jurisprudence following Belser reveals that the above rules are relatively easy to apply to cases involving personal injuries or products liability. However, when the cause of action is based on a tort other than personal injury or products liability, as in the instant case which involves a negligent misrepresentation cause of action, application of the rules is more difficult.
The only Louisiana Fourth Circuit Court of Appeal case involving La.C.C.P. art. 74 venue in a case based on a tort other than personal injury or products liability decided since Belser is United Brotherhood of Carpenters Local Union No. 1846 v. Caldwell, 552 So.2d 462 (La.App. 4th Cir.1989). In that case, which involved allegations of tortious interference with business relationships and unfair trade practices, the court found that venue was proper in the parish where the alleged wrongful conduct occurred, not in the parish where the plaintiffs claimed their damages were sustained. In so deciding, the Caldwell court noted as follows:
Louisiana courts have interpreted the phrase "where the damages are sustained" in apparent view of the underlying purpose of the articles on venue, i.e., "to provide a convenient place for trials." In doing so, the courts have attempted to prohibit forum shopping by the plaintiff by distinguishing the parish in which the damage to the plaintiff occurred (which is often incidentally the same parish in which the causative negligence occurred) from the parish in which the plaintiff may happen to be when he suffers further consequences of that damage, the latter being improper venue. As this Court stated in Coursey v. White, 184 So.2d 625 (La.App. 4th Cir. 1966), "(I)t is quite obvious that Article 74 of the Code of Civil Procedure was never intended by the redactors thereof or by the legislature to permit a plaintiff to litigate in any parish of the state so capriciously or that in order to do so he should be permitted to divide the main damage from an element thereof in order to choose his venue." Id. at 627.
552 So.2d at 464-65 (footnote omitted).
The Coursey decision is itself instructive on the kind of concerns typically considered by this court when attempting to decide whether to allow venue under La.C.C.P. art. 74 in the parish where the plaintiff alleges his damages were sustained as a result of negligent conduct on the part of the defendant occurring in another parish. The cause of action in Coursey was based on wrongful seizure of property in Livingston Parish; the plaintiff claimed damages consisting of mental anguish and loss of credit ratings, which he allegedly suffered at his residence in New Orleans. Noting the "subjectively nebulous" nature of the damages claimed by the defendant, the court held that venue was proper only in Livingston Parish. Significantly, the court noted that the plaintiffs alleged damages could have occurred anywhere and found that the purpose of La.C.C.P. art. 74 was not to allow the plaintiff to file suit in any parish of his choice.
However, the concerns expressed in the Coursey and Caldwell decisions do not impact the decision in the instant case, which involves a factual situation unlike any of the previously-reported Louisiana cases concerning venue under La.C.C.P. art. 74. This case involves a very specific factual situation where a defendant CPA firm allegedly issued a misleading financial report concerning a company's financial status in one parish. At some point after the report was issued, the plaintiffs relied on that report in deciding whether to enter a business transaction with the company to whom the report was issued in another parish, not surprisingly the parish *539 of the plaintiffs' residence where a company representative had travelled to negotiate the transaction.
The question of the location of the "parish where the damages were sustained" under his factual situation appears to be unique. Moreover, none of the cases cited by the parties or discovered in our considerable research on this issue are very helpful. However, our consideration of the rules noted by the Belser case, as well as the policy reasons behind the venue rules, convinces us that venue is proper under these factual circumstances in Orleans Parish, where the plaintiffs sustained damages as a result of their reliance on Seidman's reports concerning TGX.
First, we note that this case, though not technically a products liability case, does involve a product prepared by the defendant (financial reports) which allegedly caused injury to the Simmonses in a parish other than the parish where the wrongful conduct occurred, Caddo Parish where the reports were prepared. Significantly, no damages were suffered by the Simmonses in the parish where the wrongful conduct occurred, as was true in the personal injury cases summarized in Belser, as well as Caldwell, Coursey, and Chambers (the Supreme Court's legal malpractice case.) In light of the fact that the plaintiff suffered no damages in the parish where the wrongful conduct occurred, the first rule established by Belser does not apply.
The second rule, on the other hand, appears to be exactly on point. That rule states as follows: "where no damage is caused to the plaintiff in the parish where the wrongful conduct occurred, a parish where the damages were sustained is a proper venue." 509 So.2d at 20. Under that rule, venue is appropriate in the instant case in Orleans Parish, the only location where the Simmonses sustained damages.
Moreover, this conclusion serves the policy reason behind the venue rules recognized by Caldwell that the underlying purpose of the venue rules is to provide a convenient place for trials. 552 So.2d at 464-65. Moreover, allowing venue in Orleans Parish under the facts of this case does not violate the policy that exceptions to the venue rules are to be strictly construed because the real purpose of the venue rules is to relate venue to the place were the damages occurred. Finally, allowing venue in a case based on negligent misrepresentation resulting from a misleading business document in the parish where the plaintiff relied on the document in entering a business transaction does not encourage forum shopping because a single venue applies. The facts of this case do not involve the kind of "subjectively nebulous" damages allegedly suffered in Coursey, which might have occurred anywhere. Instead, this case involves damages sustained at a specific foreseeable time and place when the defendant's business product was brought to the parish of the plaintiffs residence by an executive of the company for which the product was prepared in furtherance of a proposed business transaction. Allowing venue in Orleans Parish under these facts and circumstances is appropriate.
Thus, the trial court judgment granting the exception of improper venue in favor of Seidman and transferring the case against Seidman is reversed.
IV. Conclusion
Accordingly, the trial court judgment granting the exception to personal jurisdiction in favor of the nonresident directors is reversed because of our finding that Louisiana courts may exercise personal jurisdiction over those defendants. The judgment granting the exception to personal jurisdiction in favor of Bracewell & Patterson is affirmed. The judgment granting the exception of improper venue in favor of Seidman and transferring the case against Seidman to East Baton Rouge Parish is reversed because we find venue against Seidman proper in Orleans Parish under La.C.C.P. art. 74 allowing venue in the parish where the damages were sustained. All costs of this appeal are to be divided equally between the parties.
REVERSED IN PART; AFFIRMED IN PART; RENDERED.
NOTES
[1] The plaintiffs claim that TGX's principal place of business is Louisiana and that TGX's financial and executive headquarters are in Louisiana. Although the defendants stated in brief that the principal place of business was in Texas until long after the 1986 transaction giving rise to the instant litigation, the defendants abandoned that claim during oral argument by agreeing, when specifically questioned by the court, that the principal place of business is in Louisiana. Moreover, the defendants have apparently never contested the Simmonses' allegation that TGX's financial and executive headquarters are in Louisiana. Thus, we will assume that TGX's principal place of business was in Louisiana at all times pertinent to this appeal.
[2] The defendants in the instant case have not raised the fiduciary shield doctrine as a defense to the suit. However, we note that the doctrine would not insulate these defendants from liability under the holding of Escoto, 95-2692, 675 So.2d 741.