954 So.2d 120 (2007)
SOUTHEAST WIRELESS NETWORK, INC., Slaydon Investment, Inc., and Celia Katz, Individually and in her Capacity as Independent Executrix for the Succession of Samuel B. Katz
v.
U.S. TELEMETRY CORPORATION, U.S. Telemetry Network, Inc., K. Steven Roberts, Thomas L. Siebert, Donald M. Clarke, S. Andrew Banks, Charles M. Bruce And James K. Gable.
No. 2006-C-1736.
Supreme Court of Louisiana.
April 11, 2007.
*123 Phelps Dunbar, Harry Alston Johnson, III, Michael Dale Hunt, Jane Ann Robert, Baton Rouge, Bruce A. Ericson, John M. Grenfell, for Applicant.
Moore, Walters, Thompson, Thomas Papillion & Cullens, Patrick Nelson Broyles, Joseph Elton Cullens, Jr., Stephen Layne Lee, Charles Roger Moore, Baton Rouge, Chehardy, Sherman, Ellis Breslin, Murray, Recile, Stephen D. Marx, Metairie, Kantrow, Spaht, Weaver & Blitzer, Paul Holden Spaht, Baton Rouge, Frank D. Blackburn & Associates, Allison Uhrich Rovira, Donald L. Beckner, Baton Rouge, for Respondent.
JOHNSON, Justice.
We granted this writ application to address whether Louisiana courts can properly exercise personal jurisdiction over a non-resident director of a corporation which has its principal place of business in Louisiana. For the following reasons, we affirm the decision of the court of appeal, finding that the trial court may properly exercise jurisdiction over defendant James K. Gable.

FACTUAL AND PROCEDURAL HISTORY
Defendant, U.S. Telemetry Corporation ("USTC") had a plan whereby it would develop equipment to transfer data using low-frequency radio waves (218 and 219 MHz bandwidth) that were auctioned off by the Federal Communications Commission in 1994. USTC was incorporated in Delaware, but at all relevant times, had its principal place of business in Baton Rouge, Louisiana. Plaintiffs, all Louisiana residents and companies, owned the licenses for the radio bands. This suit arises out of a series of contractual and securities transactions between the Plaintiffs and USTC, in which Plaintiffs either invested cash in USTC or transferred these licenses to USTC in exchange for company stock.
Plaintiffs allege that they suffered financial losses as a result of numerous misrepresentations and omissions of material facts made by USTC through members of its board of directors, including defendant, James K. Gable ("Gable"). Generally, these misrepresentations and omissions of material fact related to the state of USTC's financial condition and the state of its technology. Plaintiffs allege that because of such misrepresentations and material omissions, they paid cash and transferred FCC radio spectrum licences in exchange for securities in USTC, which resulted in financial losses.
The series of investments and contracts at issue took place from 1999 through September, 2001. Gable began his tenure as a director of USTC in June, 2001, after his employer, Texaco,[1] made a substantial investment in USTC, entitling it to appoint a director to the board. Gable, a Texaco employee, and a California resident, voluntarily accepted a position on the board. Gable continued to serve on the board until he resigned in December, 2001.
Plaintiffs sued Gable and other directors for violations of Louisiana's Blue Sky Law, La. R.S. 51:701 et seq., negligent or intentional misrepresentations, general tort liability, and breach of fiduciary duty in connection with various sales of USTC securities to the plaintiffs. Gable filed an Exception of Lack of Personal Jurisdiction which was sustained by the trial court. The trial court reasoned that Plaintiffs had not shown that Gable had sufficient contacts with Louisiana to subject him to *124 the personal jurisdiction of the court. The court of appeal reversed, holding that a Louisiana court could assert personal jurisdiction over Gable, as a director of a foreign corporation with its principal place of business in Louisiana, without offending the due process clause of the U.S. Constitution.[2] The court of appeal reasoned that "[a]ccepting such a corporate position is deemed to constitute a manifest decision to avail oneself of the protection of the laws of the forum, and therefore it is not unreasonable to subject such directors to personal jurisdiction in the forum notwithstanding that their actions may have been only in their official capacity."[3]
For the following reasons, we agree with the conclusion of the court of appeal.

DISCUSSION

Personal Jurisdiction
The Louisiana long-arm statute, La. R.S. 13:3201, provides for the exercise of personal jurisdiction over a nonresident defendant:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
Subsection B was added in 1987 to ensure that jurisdiction under the long-arm statute extended to the limits allowed by due process. Official Comments, Acts 1987, No. 418. In Fox v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 576 So.2d 978 (La.1991), this Court stated that "[s]ince the 1987 amendment to LSA-R.S. 13:3201, the sole inquiry in Louisiana into jurisdiction over a nonresident is whether the assertion of jurisdiction complies with constitutional due process. (citation omitted) The limits of the Louisiana long arm statute and the limits of constitutional due process are coextensive and therefore, if the assertion of jurisdiction meets the constitutional requirements of due process the assertion of jurisdiction is authorized under the long arm statute." Fox, 576 So.2d at 983.
This due process requirement has evolved into a two-part test. In order to subject a nonresident defendant to personal *125 jurisdiction, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); de Reyes v. Marine Mgt. and Consulting, 586 So.2d 103 (La.1991).
The "minimum contacts" prong is satisfied by a single act or actions by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). This "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. Ruckstuhl v. Owens Corning Fiberglas Corporation, XXXX-XXXX (La.4/13/99), 731 So.2d 881, cert. denied, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999). This part of the test ensures that the defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of another party or a third person. de Reyes, 586 So.2d at 106; Alonso v. Line, 2002-2644 (La.5/20/03), 846 So.2d 745, cert. denied, 540 U.S. 967, 124 S.Ct. 434, 157 L.Ed.2d 311 (2003). If the defendant deliberately engages in significant activities within a state, or creates continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there. Because his activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require the defendant to submit to the burdens of litigation in that forum. de Reyes, 586 So.2d at 106.
The second part of the due process test centers around the fairness of the assertion of jurisdiction. Once minimum contacts are established, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." Burger King Corp., 471 U.S. at 476, 105 S.Ct. at 2184. Thus, once the plaintiff meets his burden of proving minimum contacts, "a presumption of reasonableness of jurisdiction arises" and "the burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum." de Reyes, 586 So.2d at 107. In determining this fundamental fairness issue, the relevant considerations are: (1) the defendant's burden; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. Ruckstuhl, 731 So.2d at 890.

Gable's Minimum Contacts
In reviewing a judgment on an exception of lack of personal jurisdiction, we are mindful that the factual findings underlying the judgment are reviewed for manifest error. Groth v. International Dispensing Systems, Inc., 361 So.2d 1312, 1313 (La.App. 1st Cir.1978). However, the application of the facts to established rules of law is a legal question, and thus, the legal issue of personal jurisdiction over a non-resident by a Louisiana court is subject to de novo review. Id.; Babcock & Wilcox Co. v. Babcock Mexico, S.A. de C.V., 597 So.2d 110, 112 (La.App. 4th Cir. 1992), writ denied, 600 So.2d 679 (La. *126 1992); Bordelon v. Dehnert, 99-2625 (La. App. 1st Cir. 9/22/00), 770 So.2d 433, 438. Because we find, after a review of the record, that there is no dispute as to the facts related to the jurisdictional issue, we review this matter de novo.[4]
We first consider whether Gable's service on the board of directors of USTC, standing alone, is a sufficient contact with Louisiana to support the exercise of personal jurisdiction. The court of appeal relied on Simmons v. Templeton, 96-0592 (La.App. 4th Cir.11/27/96), 684 So.2d 529, in reaching its decision. In Simmons, the Court considered the fact that at least nine states  Illinois, Indiana, Kansas, Maine, Michigan, Montana, New Jersey, North Dakota, and South Dakota  include provisions automatically providing for jurisdiction over directors of corporations having their principal places of business within the state, even if the corporation is a foreign corporation. Simmons, 684 So.2d at 534. The court stated that "[t]hese `automatic' provisions indicate that the exercise of personal jurisdiction over directors of such corporations comports with fair play and substantial justice and thus does not violate constitutional standards." Id. The Court further reasoned that although Louisiana's Long-Arm Statute does not include a similar "automatic" provision, the existence of such provisions in other states is evidence that Louisiana may exercise personal jurisdiction under LSA-R.S. 13:3201(B).[5]Id. We do not find it necessary to rely on the existence of these other states' provisions in making our decision.
Because Louisiana does not have a specific statutory provision, we must look to the facts and evidence in this case  Gable's service as a director on the board of USTC, a Louisiana-based company, along with his actions taken in Louisiana while on the board  to determine whether these contacts are sufficient to subject him to the jurisdiction of the Louisiana court.
Gable was heavily involved in the pre-investment investigation of USTC on behalf of his employer, Texaco. Gable was aware, before he voluntarily accepted the position as director, that USTC filed tax returns in Louisiana, that USTC was paying leases on eight towers in Louisiana, that USTC had substantial business in Louisiana, and that USTC had its headquarters in Louisiana. He understood that by accepting a position on the board of directors of a Baton Rouge based company, his duties and responsibility would take him to Louisiana.
Gable testified that he understood that his role on the board was as a fiduciary to the USTC shareholders, and to represent their interests, not to represent Texaco's interests. He viewed his role as assisting the board in making decisions for the benefit of all of the shareholders of USTC. Gable testified that by serving on the board of directors, he had an obligation to the shareholders of USTC.
This writ application primarily involves plaintiffs' allegations against Gable under Louisiana's Blue Sky law. Plaintiffs have alleged that the most important transaction giving rise to this suit was the Act of Exchange on September 30, 2001, in which plaintiffs transferred their FCC licenses in exchange for stock in USTC. Louisiana's Blue Sky law provides that it is unlawful:
to offer to sell or to sell a security by means of any oral or written untrue *127 statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person in the exercise of reasonable care could not have known of the untruth or omission.
LSA-R.S. 51:712(B). (Emphasis added). In addition, a director is personally liable for violations of this law. LSAR.S. 51:714(B).
In this case, Plaintiffs have presented evidence of a specific action taken by Gable, in Louisiana, during his tenure on the board, which Plaintiffs allege give rise to their damages. Plaintiffs point to Gable's presence at a July 24, 2001 meeting in Baton Rouge which was attended by other USTC board members, USTC investors and potential investors. The purpose of that meeting was to discuss USTC's general intentions regarding development of Louisiana markets, and to solicit support for state involvement from Department of Economic Development Secretary, Don Hutchinson. Les Sladen, President of Southeast Wireless Network ("SEW")[6] testified that he personally met Gable at the meeting. Sladen described it as a "working meeting," where everyone present participated to some extent. Although Gable did not make a presentation on behalf of USTC, the Plaintiffs were aware that he was a director. Sladen testified that two other USTC board members gave presentations at the meeting which contained material misrepresentations relative to the viability of the company and the state of the company's technology. Sladen testified that Gable did not contradict any of these misrepresentations. Although Sladen testified that there was no "new" information provided in the presentations, the continued misrepresentations led to the September 30, 2001 Act of Exchange between SEW and USTC, which gives rise to this suit.
We find that Gable's silence at the meeting, his failure to take action to correct any false statements and/or misrepresentations made by his fellow directors, and his failure to disclose the true state of USTC's affairs to the Plaintiffs, are actions and omissions which, arguably, directly give rise to the Plaintiffs' damages.[7] Based on this evidence, we find that Gable deliberately engaged in significant activities within Louisiana, and created continuing obligations between himself and Louisiana residents. Thus, we find that Gable purposefully availed himself of the privilege of conducting activities in Louisiana, and it was reasonable for Gable to anticipate the possibility that he may be haled into a Louisiana court as a result of his service on the board. We agree with the conclusion of the court of appeal which held that "[a]ccepting such a corporate position is deemed to constitute a manifest decision to avail oneself of the protection of the laws of the forum, and therefore it is not unreasonable to subject such directors to personal jurisdiction in the forum notwithstanding that their actions may have been only in their official capacity."[8]

*128 Fairness  Louisiana Forum

We now address whether minimum requirements inherent in the concept of fair play and substantial justice have been met. A primary concern of this portion of the inquiry is the burden on the nonresident defendant being required to defend a suit in Louisiana. Gable's testimony does not reveal any substantial burden if he were required to defend this suit in Louisiana. Gable testified that his employer (Texaco) is paying for his legal defense in this matter, and would reimburse any associated travel costs. In addition, he would not lose any salary or income from Texaco for any time missed from work. Gable testified that it would be a personal hardship to be away from his young child, but he admitted that he travels fairly often for Texaco, sometimes being gone for as long as a week at a time.
Further, Louisiana has an interest in adjudicating this dispute because it involves Louisiana transactions which adversely affected Louisiana residents and/or Louisiana companies. The State has a strong public interest in protecting Louisiana residents and companies who purchase securities that are targeted to, and in, Louisiana.
Gable's minimal burden associated with having to defend this suit in Louisiana does not outweigh these other considerations. Thus, we find that notions of fair play and substantial justice are not offended by requiring Gable to defend this suit in a Louisiana court.

Fiduciary Shield Doctrine
We also reject the application of the "fiduciary shield doctrine" in this case. This doctrine "is rooted in the principle that the acts of a corporate officer in his corporate capacity cannot form the basis for jurisdiction over him in an individual capacity." Escoto v. U.S. Lending Corporation, 95-2692 (La.App. 4th Cir.5/22/96), 675 So.2d 741, writ denied, 96-1634 (La.9/27/96), 679 So.2d 1343. The doctrine requires a court to look to the individual and personal contacts, if any, of the officer or employee, with the forum state. Escoto, 675 So.2d at 745.
The court in Escoto went on to recognize an exception to the fiduciary shield doctrine, which provides that the fiduciary shield doctrine will not defeat personal jurisdiction where a non-resident corporate agent commits a tort within a forum state which would subject him to personal liability under the laws of that state. Id.
In Escoto, the court held that Louisiana courts may exercise personal jurisdiction over a nonresident defendant who solicited sales of debentures in Louisiana through registered broker/dealers, despite the fact the nonresident had essentially no personal contacts with the state. Id. at 746. The court's decision, which rejected the defendant's assertion of the "fiduciary shield doctrine," was based in large part on a finding that the defendant could be personally liable for his actions under Louisiana law, and the fact that the defendant purposely availed himself of the privilege of conducting business within the State of Louisiana both because his company sought Louisiana residents as prospective purchasers of its debentures, and because the defendant availed himself of the privilege of soliciting Louisiana residents for the benefit of his corporate employer. Id. The court stated as follows: "[The nonresident defendant] had or should have had sufficient knowledge of Louisiana's security laws to provide him fair warning that he *129 might have personal exposure in the marketing of his corporate employer's securities in this state. Under these particular circumstances we find that notions of fair play and justice are not offended by requiring [the nonresident defendant's] presence in a Louisiana court." Id.
We find the reasoning of Escoto to be applicable here. Given the fact that Gable was a director of a corporation with its principal place of business in Louisiana, he had, or should have had, sufficient knowledge of Louisiana law to know that he could be subject to personal liablity for his actions/inactions under Louisiana's Blue Sky law. Despite the fact that Gable's actions may have been done solely in a corporate capacity, Louisiana, as a means of protecting its citizens, should not permit a director's wrongdoing in the sale of securities to escape personal responsibility via a corporate shield. See: Escoto, 675 So.2d at 746.
Thus, we adopt the reasoning in Escoto, and hold that the fiduciary shield doctrine is not applicable in this case.

DECREE
For the above reasons, the ruling of the court of appeal is AFFIRMED. The trial court can properly exercise jurisdiction over defendant, James K. Gable.
KIMBALL, J., concurs and assigns reasons.
KIMBALL, Justice, concurring.
While I agree with the outcome reached by the majority, I believe the analysis of the fiduciary shield doctrine and the reliance on Escoto v. U.S. Lending Corporation, 95-2692 (La.App. 4 Cir. 5/22/96), 675 So.2d 741 are unnecessary. The majority assumes this court has adopted the fiduciary shield doctrine and proceeds to explain why this case represents an exception to it. On the contrary, however, this court has never expressly adopted or applied the fiduciary shield doctrine. Similarly, the U.S. Supreme Court has declined to apply the fiduciary shield doctrine. See Calder v. Jones, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed. 804 (1984) and Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781, 104 S.Ct. 1473, 1482, 79 L.Ed. 790 (1984). Instead, the U.S. Supreme Court, in Keeton, 465 U.S. at p. 781, n. 13, 104 S.Ct. 1473, instructs:
In Calder v. Jones, post, at 790[, 104 S.Ct. 1482], we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary. Each defendant's contacts with the forum state must be assessed individually. (Citations omitted.)
While some states continue to apply the fiduciary shield doctrine, I find it unnecessary to do so in Louisiana because the limits of Louisiana's long-arm statute are coextensive with the limits of constitutional due process.[1]Superior Supply Co., v. Associated Pipe & Supply Co., 515 So.2d 790, 792 (La.1987). Therefore, the inquiry regarding Louisiana's jurisdiction *130 over a non-resident is an analysis of the constitutional due process requirements. Bridges v. Autozone Property, Inc., 04-0814, p. 26 (La.3/24/05), 900 So.2d 784, 801. If the assertion of jurisdiction satisfies the constitutional due process requirements, then the assertion of jurisdiction satisfies Louisiana's long-arm statute. Id. Thus, if the fiduciary shield doctrine is not a necessary component of the due process analysis according to the U.S. Supreme Court, it is likewise unnecessary under Louisiana's long-arm statute.[2] The majority was required to conduct the constitutional due process analysis, but was not required to analyze the fiduciary shield doctrine to resolve this case. Accordingly, I respectfully concur.
NOTES
[1] For purposes of this decision, we will refer to the company as "Texaco." The specific Texaco entity is not relevant to this writ application.
[2] Southeast Wireless Network, Inc. v. U.S. Telemetry Corp., XXXX-XXXX (La.App. 1st Cir.6/9/06), 938 So.2d 127. (A second non-resident director and named defendant, Charles M. Bruce, also filed an exception the court's jurisdiction. Bruce did not file a writ application in this Court for review of the lower court's decision).
[3] Id. at 131.
[4] We note that the trial court did not issue written reasons for its decision.
[5] LSA-R.S. 13:3201(B) allows Louisiana courts to exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
[6] SEW is one of the Plaintiff companies.
[7] Plaintiffs argue that Gable's actions, taken while serving on the board of USTC, are violations of Louisiana's Blue Sky law, for which Gable is subject to personal liability.
[8] The record also contains additional evidence of other alleged contacts between Gable and Louisiana. We need not analyze those contacts, nor address whether they are sufficient to subject Gable to personal jurisdiction of the Louisiana courts. We find that Gable's service on the board of USTC, a corporation with its principal place of business in Louisiana, in addition to Gable's actions at the July 24, 2001 meeting in Baton Rouge, are sufficient contacts to subject Gable to the jurisdiction of the Louisiana court in this case.
[1] See also 79 A.L.R.5th 587 § 2(a), which states:

Although courts previously questioned whether the fiduciary shield doctrine exists as an element of federal due process or as a state law doctrine, it is for the most part presently viewed as a state law doctrine which functions as a tool for courts to apply in determining the scope of the state's long-arm statutes.
[2] See also 79 A.L.R.5th 587 § 2(b), which states:

It has been held that if a state's long-arm statute allows jurisdiction to the extent permitted by the Federal Constitution, employing the fiduciary shield to insulate employees is inconsistent with the wide reach of the statute, and in such a jurisdiction, the jurisdictional question becomes whether the court's exercise of jurisdiction accords with traditional notions of fair play and substantial justice embodied in the Due Process Clause of the Fourteenth Amendment, and not whether the fiduciary shield doctrine bars jurisdiction.